IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARK N. BEGLEY, | ) | CIVIL 16-00350 LEK-KJM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| COUNTY OF KAUAI, KAUAI POLICE | ) | |
| DEPARTMENT, DARRYL PERRY, ROY | ) | |
| ASHER, MICHAEL CONTRADES AND | ) | |
| DOE DEFENDANTS 16-100, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS
<u>PORTIONS OF PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

On May 23, 2017, Defendant Roy Asher, in his individual capacity ("Asher"), filed his Motion to Dismiss Plaintiff's First Amended Complaint Filed May 5, 2017 ("Asher Motion"). [Dkt. no. 109.] Plaintiff Mark N. Begley ("Plaintiff") filed his memorandum in opposition on September 1, 2017, and Asher filed his reply on September 11, 2017. [Dkt. nos. 173, 178.] This matter came on for hearing on September 25, 2017.[1] The Asher

---

[1] The September 25, 2017 hearing was limited to preliminary issues identified in an entering order issued August 10, 2017 (the "8/10/17 EO"). [Dkt. no. 154.] The 8/10/17 EO identified the following preliminary issues relevant to the Asher Motion: whether any claims should be dismissed as time-barred; and whether any such dismissal should be with or without prejudice (the "Preliminary Issues").

The September 25, 2017 hearing also addressed motions to dismiss brought by: Defendants Thomas Takatsuki, Janine Rapozo, and Jill Niitani, in their individual capacities; Defendants Paul
(continued...)

Motion is hereby granted in part and denied in part for the reasons set forth below.  Specifically, the First Amended Complaint is dismissed and Plaintiff has until **February 15, 2018** to file a second amended complaint.

## BACKGROUND

I. **The First Amended Complaint**

This action commenced on June 27, 2016, and the First Amended Complaint was subsequently filed on May 5, 2017 ("First Amended Complaint").  [Dkt. nos. 1, 103.]  Jurisdiction is asserted under 28 U.S.C. §§ 1331, 1343(a)(4), 2201, 2202, and 42 U.S.C. § 2000e-5.  [First Amended Complaint at ¶ 1.]

Plaintiff's lawsuit arises out of employment with the Kauai Police Department ("KPD"), where he is an Assistant Chief of Police.  The individual defendants are likewise KPD employees and include: Defendant Darryl Perry ("Perry"), Chief of Police; Asher, Assistant Chief of Police, and Darla Abbatiello ("Abbatiello"), Police Officer.

The gravamen of Plaintiff's claims is that, after he went to Perry to discuss alleged sexual discrimination by Asher

---

(...continued)
Applegate, Elliott Ke, Sherwin Perez, Alejandre Quibilan, Darla Abbatiello, James Miller, Randolph Chong Tim, Sr., Brandy Ledesma, Scott Williamson, and Christian Jenkins, in their individual capacities; and Defendant Ernest Kanekoa, Jr., in his individual capacity.  [Dkt. no. 120, 127, 149.]  Their motions have been denied as moot in light of the parties' stipulation to dismiss Plaintiffs' claims against them.  [Dkt. nos. 193 (stipulation), 195 (entering order denying motions as moot).]

2

against Abatiello, the defendants retaliated against him in the workplace. [Id. at ¶¶ 37-38.] Counts II and IV of the First Amended Complaint are directed against Asher:

-aiding and abetting retaliation, under Chapter 368 and § 378-2(3), against all natural person defendants ("Count II");[2] [id. at ¶¶ 125-28;] and

-intentional infliction of emotional distress against all defendants ("IIED" and "Count IV"), [id. at ¶¶ 134-36].

Factually, Plaintiff alleges the following: that Asher retaliated against him, on August 5, 2011, by circulating false, disparaging information about Plaintiff ("8/5/11 Incident"); that

---

[2] In 2011, § 378-2 read, in pertinent part:

> It shall be an unlawful discriminatory practice:
>
> . . . .
>
> > (2) For any employer, labor organization, or employment agency to discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part; [and]
> >
> > (3) For any person whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the discriminatory practices forbidden by this part, or to attempt to do so[.]

Haw. Rev. Stat. § 378-2 (Supp. 2011). These provisions were subsequently renumbered as subsections (a)(2) and (3). Haw. Rev. Stat. § 378-2 (Supp. 2012). The current versions of § 372(a)(2) and (3) are substantively identical to the 2011 version cited in the First Amended Complaint.

3

on August 25, 2011, Plaintiff reported Asher's retaliation to Perry and recommended that Perry conduct a formal investigation, but no formal investigation was done; that Plaintiff wrote a memorandum to Perry, dated October 3, 2011, which detailed Abbatiello's allegations against Asher and Perry subsequently tried to dissuade Abbatiello from pursuing a formal complaint; that when Abbatiello persisted with her formal complaint against Asher, Perry bypassed protocol and excluded Plaintiff from various meetings and duties; that Perry removed Plaintiff, on December 16, 2011, as Acting Chief of Police; that, in January and February 2012, Perry and Defendant Michael Contrades ("Contrades"), KPD Deputy Chief of Police, issued orders to exclude Plaintiff from various briefings;[3] that, due to Abatiello's complaint, Perry voluntarily surrendered his gun, badge, and police credentials but, on February 22, 2012, unlawfully ordered Plaintiff to return these items ("the 2/22/12 Incident"). Plaintiff refused to do so, based on orders from the Mayor's Office. As a result, Perry gave press interviews which disparaged Plaintiff; that Solette Perry's ("Ms. Perry") filed a complaint against Plaintiff with the Police Commission regarding

---

[3] Contrades filed a motion to dismiss on May 23, 2017 ("Contrades Motion"). [Dkt. no. 111.] However, the Contrades Motion does not raise any of the Preliminary Issues, and it was not before the Court at the September 25, 2017 hearing. [8/10/17 EO at 2.] A separate order will be issued addressing the Contrades Motion.

4

the 2/22/12 Incident despite Ms. Perry not being present when the 2/22/12 Incident occurred. Ernest Kanekoa ("Kanekoa"), Police Commission Chair, is Perry's personal friend and was listed as a witness in Ms. Perry's complaint, but did not recuse himself from investigating Ms. Perry's complaint. Kanekoa requested Contrades have KPD investigate Ms. Perry's complaint against Plaintiff; that after returning to paid duty on March 12, 2012, Perry leaked Plaintiff's confidential medical information to the media; that Contrades, on April 2, 2012, ordered an investigation against Plaintiff for padding overtime; that Perry, on May 14, 2012, had disciplinary charges issued against Plaintiff based on the 2/22/12 Incident; that KPD's Administrative Review Board ("ARB") scheduled a disciplinary hearing on these charges. Asher was a member of the ARB and, on May 24, 2012, Asher sent Plaintiff a letter stating the ARB hearing was postponed ("the 5/24/12 ARB Postponement Letter"); that, on June 14, 2012, Contrades sent Plaintiff a letter stating that disciplinary proceedings against Plaintiff were ongoing, and the ARB would notify Plaintiff of the new hearing date; that Plaintiff, on November 15, 2012, filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against the County ("11/15/12 Charge"); that, on June 4 and 5, 2013, Contrades issued four new disciplinary notices against Plaintiff; that, on June 24, 2013, Contrades issued eight new disciplinary notices against Plaintiff, with

each containing charges that were terminable offenses; that Plaintiff, on June 27, 2013, filed a third charge of discrimination with the EEOC against the County ("6/27/13 Charge"); that, on April 25, 2014, the EEOC issued a reasonable cause finding as to the 11/15/12 Charge and the 6/27/13 Charge; that, on December 12, 2014, Perry had Contrades order an internal investigation against Plaintiff for animal cruelty; and that, on April 8, 2016, a right-to-sue letter was issued to Plaintiff from the EEOC for the 11/15/12 Charge and the 6/27/13 Charge.[4]

## II. The Asher Motion

Asher characterizes Plaintiff's claims against him as being limited to two discrete occurrences: the 8/5/11 Incident, and the 5/24/12 ARB Postponement Letter. [Mem. in Supp. of Asher Motion at 2-3 (citing First Amended Complaint ¶¶ 41, 72).] As to Count IV, which alleges IIED, Asher argues that it is time-barred. As to Count II, which alleges aiding and abetting retaliation, Asher argues that the 8/5/11 Incident allegation is time-barred, and that the 5/24/12 ARB Postponement Letter allegation is insufficient to state a claim.

---

[4] According to the First Amended Complaint, the Hawai`i Civil Rights Commission ("HRCR") "also issued a Notice of Right to Sue letter, dated February 15, 2017 regarding Plaintiff's complaint." [First Amended Complaint at ¶ 34 n.2.]

**DISCUSSION**

I.  **Timeliness of IIED Claim**

There is a two-year statute of limitations for IIED claims. DeRosa v. Ass'n of Apartment Owners of the Golf Villas, 185 F. Supp. 3d 1247, 1259-60 (D. Hawai`i 2016). The discovery rule applies to this statute of limitations. Id. at 1260 ("[U]nder the discovery rule, a cause of action accrues when the plaintiff knew or should have known of the causal connection between the defendant's action and the damage done.") (quoting United States EEOC v. NCL Am., 535 F. Supp. 2d 1149, 1169-70 (D. Hawai`i 2008)). This two-year period to file an IIED claim is not tolled while a plaintiff's HCRC complaint is pending. Id. (citing Hale v. Hawaii Publ'ns, Inc., 468 F. Supp. 2d 1210, 1232 (D. Hawai`i 2006)).

Here, the action was commenced June 27, 2016. Any incident upon which a claim for IIED is based that occurred before June 27, 2014 will be time-barred. See DeRosa, 185 F. Supp. 3d at 1259-60. As against Asher, the IIED claim (in Count IV of the Amended Complaint) is based upon two incidences - the 8/5/11 Incident, and the 5/24/12 ARB Postponement Letter - both of which occurred before June 27, 2014. Thus, unless there is a basis to toll the statute of limitations, the Court is compelled to find that the IIED claim (Count IV) is time-barred as to Asher.

7

Plaintiff argues that Count IV alleges a continuing tort sufficient to toll the statute of limitations. The Hawai`i Intermediate Court of Appeals ("ICA") has explained:

> Generally, a continuing tort is defined as
>
> > "one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation, and for there to be a continuing tort there must be a continuing duty."
>
> 54 C.J.S. *Limitations of Actions* § 177 (1987) (footnote omitted). . . .
>
> . . . .
>
> This continuing-tort exception is generally recognized because
>
> > usually no single incident in a continuous chain of tortious activity can fairly or realistically be identified as the cause of significant harm, [and] it seems proper to regard the cumulative effect of the conduct as actionable. Moreover, since one should not be allowed to acquire a right to continue the tortious conduct, it follows logically that statutes of limitation should not run prior to its cessation.
>
> Curtis v. Firth, 123 Idaho 598, 850 P.2d 749, 754 (Idaho 1993) (holding that a claim for intentional infliction of emotional distress was a continuing tort for purposes of a statute of limitations (quoting Page v. United States, 234 U.S. App. D.C. 332, 729 F.2d 818, 821-22 (D.C. Cir. App. 1984)) (quotation marks omitted).
>
> Thus, generally, a continuing tort is a tortious act that occurs so repeatedly that it can be termed "continuous," such that one may say that

> the tortious conduct has not yet ceased.
> Accordingly, the statute of limitations cannot
> run, because the tortious conduct is ongoing. The
> example of the flooding of one's property, as in
> the instant case and as illustrated by the
> Restatement (Second) of Torts, is a good one.

Anderson v. State, 88 Hawai`i 241, 247-48, 965 P.2d 783, 789-90 (Ct. App. 1998) (some alterations in Anderson).

The type of conduct alleged must be examined to determine whether it is "the type of conduct that the continuing tort exception is intended to encompass," as compared to "a series of separate and distinguishable acts." See Boyd v. Univ. of Hawai`i, No. 30547, 2012 WL 503797, at *3 (Hawai`i Ct. App. Feb. 13, 2012) (declining to apply continuing tort exception to IIED and HWPA claims). Additionally, even if the injurious effects of prior acts continues, this is insufficient to apply the continuing tort exception, absent an allegation of continuous unlawful acts. See Casino v. State of Hawai`i, Dep't of Health, No. 22610, 2003 WL 23019422, at *3 (Hawai`i Dec. 29, 2003) (rejecting argument that "privatization is a continuing violation").

Plaintiff seems to imply, but does not sufficiently allege, that Asher cooperated or assisted in concert with other defendants to support allegedly adverse employment actions against him. As currently pled, Count IV fails to allege a continuing violation sufficient to toll the statute of limitations. The 8/5/11 Incident and the ARB Postponement

9

Letter, at best, constitute discreet acts of discrimination. See, e.g., Kosegarten v. Dep't of the Prosecuting Att'y, 892 F. Supp. 2d 1245, 1260 (D. Hawai`i 2012) (concluding that the incidents which occurred outside of the limitations period "were discrete incidents of discrimination that [we]re distinct from the incidents which occurred during the [limitations] period").

The "'continual ill effects'" experienced by Plaintiff because of the investigation of the 2/22/12 Incident (the subject of the 5/24/12 ARB Postponement Letter) are not sufficient to apply the continuing violation doctrine. See Anderson, 88 Hawai`i at 247, 965 P.2d at 789 (quoting 54 C.J.S. *Limitations of Actions* § 177).

At the hearing, Plaintiff argued that, under the discovery rule, his IIED claim accrued in 2016, once documents produced in the EEOC proceeding revealed the outrageous character of Defendants' actions.[5] No mention of the 2016 document productions is made in the First Amended Complaint. Typically, courts cannot consider evidence beyond the four corners of the complaint, although if the complaint refers to a document, courts can rely on it if the document is central to the party's claims and its authenticity is not in question. See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010). No

---

[5] Outrageousness of the alleged conduct is a necessary element of IIED. Young v. Allstate Ins. Co., 119 Hawai`i 403, 429, 198 P.3d 666, 692 (2008).

exhibits relating to the 2016 document productions were attached to the First Amended Complaint. Therefore, this Court cannot consider Plaintiff's argument that his IIED claim against Asher accrued in 2016. See id.

Based on the allegations in the First Amended Complaint, Count IV, the IIED claim against Asher, is time-barred and fails to allege a plausible IIED claim against Asher. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007))). The Asher Motion is therefore granted as to Count IV.

However, the dismissal must be without prejudice because it is arguably possible for Plaintiff to cure the defect in his IIED claims against Asher by alleging facts that would support his position regarding the 2016 document production.[6] See Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty., 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment."

---

[6] To the extent that the Asher Motion can be construed as arguing that amendment of Plaintiff's IIED claim against him would be futile because Plaintiff cannot allege sufficiently outrageous conduct, the argument is rejected.

(brackets, citation and internal quotation marks omitted)).

## II. **Timeliness of Aiding and Abetting Claim Against Asher**

Asher also argues that the aiding and abetting retaliation claim (Count II) is time-barred because Plaintiff's administrative complaint was not timely filed. When employment discrimination complaints must be filed under § 378-2 is governed by Haw. Rev. Stat. § 368-11(c). Kosegarten, 892 F. Supp. 2d at 1261. Section 368-11(c) states: "No complaint shall be filed after the expiration of one hundred eighty days after the date: (1) Upon which the alleged unlawful discriminatory practice occurred; or (2) Of the last occurrence in a pattern of ongoing discriminatory practice."

Based on the 11/15/12 Charge, claims based upon incidences occurring before May 19, 2012 are time-barred. See Kosegarten v. Dep`t of the Prosecuting Attorney, 907 F. Supp. 2d 1143, 1145-46 (D. Hawai`i 2012) ("Insofar as aiding and betting is a state law claim pursuant to Haw. Rev. Stat. § 378-2(3) and it does not arise under Title VII," the appropriate limitations period is 180 days. (footnote omitted)). Plaintiff is therefore precluded "from pursing claims . . . [for] relief from Defendants for any damages that [he] suffered directly from those incidents." See Kosegarten, 892 F. Supp. 2d at 1263. Plaintiff's aiding and abetting claim based on the 8/5/11 Incident is therefore time-barred, but the claim based on the

5/24/12 ARB Postponement Letter is not.

While the 8/5/11 Incident is time-barred as an independent basis for an aiding and abetting claim, to the extent that it is based upon admissible evidence, Plaintiff may support his aiding and abetting claim with relevant facts related to the 8/5/11 Incident.  See id. ("Plaintiff, however, may rely on the time-barred incidents as background facts in support of [his] timely claims, if Plaintiff's evidence of those incidents is admissible pursuant to the Federal Rules of Evidence and the applicable case law.")

The Asher Motion is granted insofar as the portion of Count II based on the 8/5/11 Incident is dismissed.  Because it is clear that any amendment would be futile, the dismissal is with prejudice.  The Asher Motion is denied to the extent that it argues that the portion of Plaintiff's aiding and abetting claim based on the 5/24/12 ARB Postponement Letter is untimely.

### III. Plausability of Count II Against Asher

Asher argues that the 5/24/12 ARB Postponement Letter allegation is insufficient to state a claim for aiding and abetting retaliation.  According to Plaintiff, the ARB had been scheduled to hear frivolous but serious charges, Asher was a member of the ARB, and Asher had previously retaliated against Plaintiff because of Plaintiff's protected activity.  [First Amended Complaint at ¶¶ 57, 70-71.]  For purposes of a motion to

13

dismiss, the Court must consider all factual allegations as true. See Iqbal, 556 U.S. at 678.

Taken as a whole and considering all of its allegations as true, the First Amended Complaint sets forth an aiding and abetting claim against Asher because the 5/24/12 ARB Postponement Letter was part of an ongoing retaliatory scheme using disciplinary hearings and investigations to retaliate against Plaintiff because of his protected activity. This Court must therefore consider what significance the 5/24/12 ARB Postponement Letter provided to the retaliatory scheme - was it substantial or too slight to sustain liability? This district court has stated:

> under HRS § 378-2(3), a person aids and abets an unlawful discriminatory practice of another if he knows that the practice constitutes a breach of the other's duty and if he provides substantial assistance or encouragement with respect to the practice.
>
> . . . . The character of a defendant's involvement is critical because "[t]he assistance of or participation by the defendant may be so slight that he is not liable for the act of the other." Restatement (Second) of Torts § 876 cmt. d. "In determining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered." Id.

See Lovell v. United Airlines, Inc., No. CIV. 09-00146 ACK-LEK, 2009 WL 3172729, at *4 (D. Hawai`i Oct. 2, 2009). As pertinent to Asher's role in the retaliatory scheme, Plaintiff alleges that: Asher was a member of the ARB; the ARB charged Plaintiff

14

with serious and terminable offenses; Asher played a role in postponing the ARB hearing and issuing the 5/24/12 ARB Postponement Letter; and Asher's assistance was substantial because postponing the ARB hearing prevented revealing the frivolous nature of and retaliatory purpose for the charges. The 8/5/11 Incident can be considered as evidence of Asher's retaliation for Plaintiff's reporting of him, and a motive for Asher's alleged actions surrounding the ARB hearing postponement.

At this juncture, Plaintiff has demonstrated that the 5/24/12 ARB Postponement Letter played a significant role in the retaliatory scheme and, therefore, Plaintiff has alleged sufficient facts to state a plausible claim to relief for aiding and abetting retaliation. The portion of Count II based on the 5/24/12 ARB Postponement Letter sufficiently states a plausible claim, and the Asher Motion is denied as to that portion.

**IV. Qualified Immunity**

To the extent the Asher Motion seeks dismissal of Counts II and IV on qualified immunity grounds, it is denied without prejudice since this Court is permitting Plaintiff to amend the complaint. Asher may revisit this issue after Plaintiff files his second amended complaint, or after the deadline to do so has passed.

## **CONCLUSION**

On the basis of the foregoing, Defendant Roy Asher's Motion to Dismiss Plaintiff's First Amended Complaint Filed May 5, 2017, filed May 23, 2017, is HEREBY GRANTED IN PART AND DENIED IN PART. As to Count II, the Motion is GRANTED insofar as the portion of Count II based on the 8/5/11 Incident is dismissed WITH PREJUDICE. The Motion is DENIED as to the portion of Count II based on the 5/24/12 ARB Postponement Letter. As to Count IV, the Motion is GRANTED insofar as it seeks dismissal of Count IV, and DENIED insofar as the dismissal is WITHOUT PREJUDICE.

Plaintiff has until **February 15, 2018** to file a second amended complaint in accordance with this Order. The Court CAUTIONS Plaintiff that, if he fails to file his second amended complaint by **February 15, 2018**, the claims dismissed without prejudice in this Order will be dismissed with prejudice. Plaintiff is only granted leave to address the defects in his claims identified in this Order. To the extent Plaintiff wishes to make other changes, he must file a motion pursuant to Fed. R. Civ. P. 15(a)(2).

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 4, 2018.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MARK N. BEGLEY VS. COUNTY OF KAUAI, ET AL; CIVIL 16-00350 LEK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PORTIONS OF PLAINTIFF'S FIRST AMENDED COMPLAINT**