LORETTA A. SHEEHAN          4160-0
CLARE E. CONNORS            7936-0
THOMAS M. OTAKE             7622-0
DAVIS LEVIN LIVINGSTON
851 Fort Street, Suite 400
Honolulu, Hawaiʻi 96813
Telephone: (808) 524-7500
Facsimile: (808) 356-0418
Email: lsheehan@davislevin.com

LYLE S. HOSODA              3964-0
ADDISON D. BONNER           9163-0
HOSODA & BONNER, LLLC
Three Waterfront Plaza, Suite 499
500 Ala Moana Boulevard
Honolulu, Hawaiʻi 96813
Telephone: (808) 524-3700
Facsimile: (808) 524-3838
Email: lsh@hosodalaw.com

Attorneys for Plaintiff
MARK N. BEGLEY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MARK N. BEGLEY,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>COUNTY OF KAUAI, KAUAI POLICE DEPARTMENT; DARRYL PERRY; ROY ASHER; MICHAEL CONTRADES; AND DOE DEFENDANTS 16-100,<br><br>　　　　　Defendants. | Civil No. CV16-00350 LEK-RLP<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO [323] DEFENDANTS COUNTY OF KAUAI, KAUAI POLICE DEPARTMENT; DARRYL PERRY, in his official capacity; ROY ASHER, in his official capacity; MICHAEL CONTRADES,' in his official capacity, SUBSTANTIVE JOINDER TO [311] DEFENDANT DARRYL PERRY'S, in his individual capacity, MOTION FOR SUMMARY JUDGMENT, and [312] DEFENDANT ROY ASHER'S, in his individual capacity, MOTION FOR SUMMARY JUDGMENT AS** |

|                                                          |
|----------------------------------------------------------|
| TO PLAINTIFF'S SECOND AMENDED COMPLAINT; CERTIFICATE OF SERVICE |
| DATE: November 19, 2018<br>TIME: 9:45 a.m.<br>JUDGE: Hon. Leslie E. Kobayashi |
| TRIAL: May 6, 2019                                       |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO [323] DEFENDANTS COUNTY OF KAUAI, KAUAI POLICE DEPARTMENT; DARRYL PERRY, in his official capacity; ROY ASHER, in his official capacity; MICHAEL CONTRADES,' in his official capacity, SUBSTANTIVE JOINDER TO [311] DEFENDANT DARRYL PERRY'S, in his individual capacity, MOTION FOR SUMMARY JUDGMENT, and [312] DEFENDANT ROY ASHER'S, in his individual capacity, MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff MARK N. BEGLEY ("Plaintiff"), by and through his attorneys Davis Levin Livingston and Hosoda & Bonner, LLLC, hereby submits his Memorandum in Opposition to [323] Defendants County Of Kauai, Kauai Police Department; Darryl Perry, In His Official Capacity; Roy Asher, In His Official Capacity; Michael Contrades,' In His Official Capacity ("collectively, Defendant County"), Substantive Joinder To [311] Defendant Darryl Perry's, In His Individual Capacity ("Perry"), Motion For Summary Judgment, And [312] Defendant Roy Asher's, In His Individual Capacity ("Asher"), Motion For Summary Judgment As To Plaintiff's Second Amended Complaint, ("SJ").

## I. INTRODUCTION

Defendant County would like to believe that this case is simply about "a workplace dispute involving certain members of KPD." SJ at 8. Sadly, however, it is about a systemic problem that plagued the Kauai Police Department ("KPD") for years, but was challenged when Plaintiff, an Assistant Chief in good standing with

2

more than 20 years of service, refused to be complicit with the practice of treating officers differently based on their gender, protecting officers who engaged in misconduct and retaliating against those who complained. *See* Plaintiff's Concise Counterstatement of Material Facts in response to [311] Defendant Perry's Motion for Summary Judgment ("Perry CCSMF"), Ex. 15 to Exhibit V; and Plaintiff's Concise Counterstatement of Material Facts in response to [312] Defendant Asher's Motion for Summary Judgment ("Asher CCSMF"), Ex. 15 to Exhibit 23.

As a direct result of Plaintiff's effort to ensure the complaint of a female officer (the "Abbatiello Complaint") was properly investigated by an outside investigator, he became the target of a calculated, malicious campaign of retaliation. The fact that the individuals who promoted the unlawful practice and then spearheaded the retaliation against Plaintiff were the top brass in charge of KPD during the relevant period – i.e., the Chief, Deputy Chief and an Assistant Chief – is significant and a fundamental reason why the retaliation against Plaintiff was so effective and so outrageous. It is also the reason why no Defendant qualifies for immunity.

For the reasons set forth in Plaintiff's memoranda in opposition to Defendant Perry's Motion for Summary Judgment [Document 387 ("Perry's MIO")] and Defendant Asher's Motion for Summary Judgment, incorporated herein, as well as for the reasons discussed below, both Defendant County's SJ and the underlying motions must be denied in their entirety.

II. **THE FACTS CONTROVERTED IN PLAINTIFF'S MEMORANDA AND CCSMF FILED IN OPPOSITION TO PERRY AND ASHER'S MOTIONS ALSO CONTROVERT THE FACTS RELIED UPON IN DEFENDANT COUNTY'S SUBSTANTIVE JOINDER**

Plaintiff incorporates herein his identification and presentation of material facts that controvert Defendants' proffered facts and, at a minimum, establish the

existence of genuine issues of dispute as to material facts. Accordingly, Plaintiff does not further address Defendant County's recitation of relevant background [SJ at 8-12] except to note that the material issues are controverted by Plaintiff's opposition pleadings and add nothing further to this analysis.

### III. PREVIOUS COURT RULINGS ADDRESS DEFENDANT COUNTY'S LEGAL ARGUMENTS

The Court already has ruled on a number of the issues raised in Defendant County's Substantive Joinder, including:

1. The discovery rule applies to Plaintiff's claim for intentional infliction of emotional distress ("IIED"), Documents 198 at 10-11, and 340 at 11;

2. Plaintiff's claim for aiding and abetting the retaliation survives legal challenge, Document 199 at 7;

3. Defendant Contrades' challenge to Plaintiff's claim for aiding and abetting the retaliation is rejected, Document 340 at 7-9;

4. Defendant County's challenge to Count II is rejected because it is alleged only against Defendants in their individual capacities, Document 340 at 15;

5. Again rejecting Defendant Asher's argument that he is entitled to qualified immunity, Document 340 at 17-18;

6. Plaintiff must plead additional facts "to state that Contrades acted with malice" (Document 340 at 19), which Plaintiff did in its Third Amended Complaint ("TAC"), Documents 349, 357-1 (TAC with typographical errors corrected) at 2-4, 32-47.

Accordingly, as to Defendant County's argument regarding the statute of limitations, the Court has ruled on more than one occasion that the discovery rule applies and Plaintiff's TAC, in compliance with the Court's orders, has identified sufficient facts that are now entered into the record in Plaintiff's opposition

pleadings.¹ *See* Perry CCSMF (with exhibits); Asher CCSMF (with exhibits).

Moreover, the evidence establishes that Defendants' coordinated retaliatory efforts against Plaintiff continued well into the two-year period preceding the filing of his complaint. Plaintiff's stress leave was approved by the Mayor and the County Attorney on March 11, 2012, the day before Defendant Perry negotiated his return to KPD on March 12, 2012. Not only did Defendants continue to challenge his stress leave, they attempted as late as **January 2016**, to terminate Plaintiff or force him into a Return to Work Program. Perry CCSMF: AMF No. 55, Exhibits OO, PP, SS.

Indeed, the evidence – including the conclusions of defense independent medical examiners (*see* Perry CCSMF:AMF No. 56, Exhibit KKK at 39) – establishes that Plaintiff is willing to return to work at KPD but cannot do so because the retaliation that is the source of his emotional distress is continuing. Even Defendants admit that the frivolous, retaliatory internal disciplinary proceedings remain pending and that Plaintiff will be subject to them the moment he attempts his return to KPD. SJ at 14-15.

### IV. THE EVIDENCE DEMONSTRATES PLAINTIFF SUFFERED ADVERSE EMPLOYMENT ACTIONS AS WELL AS A CAUSAL LINK BETWEEN THE ADVERSE EMPLOYMENT ACTIONS AND PLAINTIFF'S PROTECTED ACTIVITY

This case is not about discrete disciplinary actions initiated by Defendants in good faith and as part of their normal duties. As the evidence identified in Plaintiff's opposition pleadings to the underlying motions demonstrates, Defendants Perry, Contrades and Asher initiated, investigated and proceeded with a barrage of internal disciplinary actions against Plaintiff for one, improper purpose: retaliation against

---

¹ Defendant County also reasserts in its SJ the same argument the Court characterized as "puzzling" and thus rejected – that Plaintiff must allege he "suffered extremely emotional distress as a result of obtaining any EEOC documents." SJ at 26; Document 340 at 11-12.

Plaintiff for his efforts to ensure the Abbatiello Complaint against Defendant Asher was properly investigated. Plaintiff engaged in this protected activity despite the efforts of Defendants Perry and Asher to ignore, dissuade and table the Complaint.

As Plaintiff demonstrates in the Perry and Asher MIOs, Defendants were not acting in good faith pursuant to County policies. Perry MIO at 11-21; Asher MIO at 11-21. To the contrary, they were purposefully and intentionally abusing their positions of power by initiating numerous frivolous internal investigations of Plaintiff, including Administrative Board Review ("ARB") proceedings to which no other Assistant Chief in KPD was ever subjected.[2] Defendants Contrades and Asher were members of the ARB, and Defendant Perry had the final say on whether an ARB matter was authorized as well as on the discipline that would be administered regardless of the result of an ARB proceeding. Perry CCSMF:AMF No. 16 Exhibit X at 46:5-10; Exhibit W at 43:7-13; 46:21-49:21, Exhibit V at 15:17-24; AMF No. 17, Exhibit W at 47:24-48:12; 48:21-49:21, Exhibit V at 15:17-24; Asher CCSMF:AMF No. 28, Exbibit 23 at 15:17-24; Ex. 1 to Exhibit 23; Ex. 1 to Exhibit 31; Exhibit 30 at 46:5-10, 252:7-253:4; Exhibit 29 at 43:6-12, 46:20-47:10, 54:4-16, 72:8-17.

In addition, Defendants Perry and Contrades used their respective positions with KPD for the purpose of getting Plaintiff removed from his voluntary membership in the State E911 Board. Because their positions with KPD gave them access to and credibility with police department personnel from other counties, as well as with state government officials, they eventually were successful in their efforts to malign Plaintiff's character and secure his removal. Perry's CCSMF:AMF No. 32, Exhibit V at 222:14-235:12; Exs. 22-27 to Exhibit V; Exhibit P at 12.

---

[2] Defendants also initiated Internal Actions ("IAs") and Notices of Disciplinary Action ("NDAs").

The timeline of Defendants' conduct not only demonstrates temporal proximity but proves beyond any doubt that Defendants' motivations in *inter alia* (1) initiating numerous official internal investigations (NDAs, IAs and ARB proceedings), (2) incessantly challenging Plaintiff's stress leave (approved by the Mayor), (3) incessantly maligning Plaintiff regarding his voluntary participation on the State E911 Board, (4) disclosing Plaintiff's confidential health information (even after being advised on multiple occasions that it was unlawful to do so) and (5) conducting unlawful surveillance of Plaintiff, were malicious and intended for an improper purpose: retaliation. Perry's CCSMF:AMF Nos. 19, 30, 31, 32, 33.

Moreover, because Defendants Perry and Contrades were Plaintiff's supervisors, the egregiousness of their deliberate attempts to set up and take down Plaintiff – including initiating official KPD disciplinary actions against Plaintiff for allegedly violating Defendant Perry's February 22, 2012 order to return his police equipment (in contravention of the Mayor's direct order to the contrary) – are both heightened and indeed, outrageous. This unlawful conduct is shameful for any employer, but most particularly for an employer charged with enforcing the law.

Given these facts, Defendant County's argument that there is no adverse employment action because the internal investigations "either are still pending or have resulted in no disciplinary action" is ironic. SJ at 14. As an initial matter, because these unprecedented and numerous investigations are integral to Defendants' coordinated retaliatory effort, whether they result in disciplinary action is not the point at all. Indeed, the fact they are still pending is evidence that the retaliation against Plaintiff continues to the present.

Moreover, this Court has held that the test for adverse employment action is that the action is "materially adverse" to a reasonable employee, which means "harmful to the point that they could dissuade a reasonable worker from making or

7

supporting a charge of discrimination." *Lee v. Hawaii*, No. CIV0900032 SOM/KSC, 2010 WL 235009, at *5 (D. Haw. Jan. 20, 2010).

Here, a reasonable employee in Plaintiff's position would be dissuaded from making a report of discrimination where: 1) he could face multiple frivolous investigations[3]; 2) these investigations could be initiated by a the very person against whom the employee's report of discrimination was made[4]; 3) these investigations could be initiated at the direction of the employee's supervisor, against whom the employee also had made a report of discrimination[5]; 4) the investigations could be decided by an ARB proceeding comprised of the very people against whom the employee's report of misconduct was made[6]; 5) results of these investigations could lead to the employee's termination and/or significant disciplinary action[7]; 6) the employee could be disparaged in the workplace and in public by the people he had reported for discrimination. *See also* Asher MIO at 15-16.

Defendant County also presents the pretextual argument that the only reason Plaintiff was subjected to the aforementioned adverse employment actions, particularly the KPD internal investigations, was because other officers had complained "of wrongful conduct," Plaintiff's actions were insubordinate and all

---

[3] For example, Plaintiff was investigated in NDA13-05 and scheduled for an ARB hearing for providing confidential information to investigator Todd Withy, Esq., despite the fact that no one had placed any restrictions on the information Withy could receive. Asher CCSMF:AMF No. 32, Exhibit 29 at 232:1-234:4.

[4] For example, the NDA initiated by Defendant Perry, NDA 12-06, which accused Plaintiff of disobeying Defendant Perry's orders to return his KPD-issued items, created a situation in which Defendant Perry was the witness, the prosecutor, the judge, the jury and the executioner. AMF No. 32, Exhibit 29 at 39:8-43:13; 51:8-52:12; Ex. 11 to Exhibit 29.

[5] *Id*.

[6] Asher AMF No. 32, Exhibits. 29, 30 of 29.

[7] AMF No. 32 Exhibit 29 at 48:7-12; 49:10-21

"actions were justified and in accordance with KPD procedure and protocols." SJ at 10-11. However, as the Supreme Court has explained:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

In addition, the Ninth Circuit has determined that pretext can be inferred from circumstantial evidence, including the employer's knowledge of the protected activities and the proximity in time between the protected activity and adverse action. *See Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011); *see also Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1285–86 (9th Cir. 2001) (summary judgment denied where plaintiff introduced substantial and specific evidence that employer's explanations were pretextual, unworthy of credence and likely motivated by unlawful retaliation.). In *Winarto*, the plaintiff demonstrated that she had positive reviews prior to engaging in the protected activity, and the record reflected her employer's "exasperation, lack of sympathy and even animosity" toward plaintiff. *Winarto*, 274 F.3d at 1286. Accordingly, the Court determined: "To ignore Winarto's testimony is to intrude on the province of the jury." *Id.*

As discussed, the timing of events establishes that all of the retaliatory actions against Plaintiff occurred after he confronted Defendant Asher and reported the Abbatiello Complaint to Defendant Perry. Prior to engaging in this protected activity, Plaintiff was an officer with 20 years of service and in good standing. Plaintiff's Affidavit ("PAff") at ¶ 3, Exhibits A-O. Shortly after Plaintiff formally reported Officer Abbatiello's complaints, Defendants each initiated and/or played a significant role in the multitude of adverse employment actions against Plaintiff,

including the initiation of an unprecedented number of KPD investigations. Perry's CCSMF:AMF Nos. 19, Exhibit W at 124:10-25; 137:7-140:8; Ex. 12 to Exhibit W.

The undisputed evidence demonstrates that the adverse employment actions taken by Defendant Asher and Defendant Contrades were in furtherance of Defendant Perry's retaliatory scheme against Plaintiff for reporting the County Defendants of violating federal and state law. Further, Defendant Asher, Defendant Perry and Defendant Contrades utilized their positions in KPD to order and instruct their subordinates to engage and further aid in the retaliation against Plaintiff. Therefore, Plaintiff has established a prima facie case of retaliation perpetrated by the County Defendants, and that the justifications offered by the County Defendants were pretextual.

Not only are the justifications raised by Defendant County pretextual, they fail the summary judgment standard that requires all evidence be construed in the light most favorable to the nonmoving party.

Regarding Defendant County's municipal liability argument, liability for Title VII claims under 42 U.S. C. 1981 can be established in one of three ways:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

*Edenfield v. Estate of Willets*, No. CIV. 05-00418 SOM/BM, 2006 WL 1041724, at *14 (D. Haw. Apr. 14, 2006), *quoting Gillette v. Delmore,* 979 F.2d 1342, 1346–47 (9th Cir.1993)).

All Defendants have declared, in varied language, that their actions toward Plaintiff were performed pursuant to the procedures and duties applicable to their positions. For example, Defendant Perry declared: "as the Chief of Police, I [am] duty-bound to uphold the law and report what I perceived to be a potentially fraudulent workers' compensation claim being made by Plaintiff." Declaration of Darryl Perry at ¶ 11. He also declared that many of the documents he personally penned "were made (1) in the course of the regularly conducted business activity of the Kauai Police Department." *Id.* at 15-16.

In his declaration, Defendant Asher stated regarding internal investigation KPD-IA-12-06: "I was obligated by the County of Kauai Policy Against Discrimination and Harassment…to report the incident so that an investigation can be initiated." Declaration of Roy Asher at ¶12. Similarly, in Defendant Contrades' Motion to Dismiss the Third Amended Complaint, he argues: "Each of the actions taken by Contrades followed internal protocol after Begley transferred to the Administrative and Technical Bureau and subsequently left work on stress leave. What Begley views nefarious was nothing more than Contrades adhering to KPD procedural rules." Memorandum in Support of Defendant Michael Contrades' Motion to Dismiss Plaintiff's Third Amended Complaint filed herein on August 31, 2018. Document 360-1 at 9.

Notably, Defendant County makes inconsistent arguments on this point. At the same time it argues Defendants' conduct does not constitute retaliation, it also argues that Defendants' actions were motivated by "personal animus" such that the County is immune under municipal liability. SJ at 16. In any event, it is clear that Defendants were acting in their official positions. Plaintiff has established that Defendant Perry, as the Chief of Police, as well as Defendants Asher and Contrades, both of whom were at some point Acting Chief of Police during the time they

11

committed adverse employment actions against Plaintiff, engaged in conduct that "may fairly be said to represent official policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986); *Gillette*, 979 F.2d at 1348 (municipal liability may attach where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.) Not only did Defendant Perry, as Chief, initiate, authorize, ratify and encourage Defendant Asher and Defendant Contrades' retaliatory conduct against Plaintiff, it is clear that Defendant County – fully aware of the unlawful conduct – did not put an end to it.

### V. PLAINTIFF'S IIED CLAIM IS SUPPORTED BY EVIDENCE DEFENDANTS ACTED INTENTIONALLY AND WITH NOTICE THAT THEIR ACTIONS WERE LIKELY TO RESULT IN HARM

The Court previously ruled that Plaintiff must prove Defendants' conduct was intentional or reckless, outrageous and that it caused extreme emotional distress to Plaintiff. Document 199 at 6. As discussed, specific facts produced by Defendants in 2016, establish the malicious intent and animus of Defendants towards Plaintiff. Documents 349, 357-1 at 2-4, 32-47. These documents also reveal the degree of Defendants' coordination.

As to the element of outrageousness, conduct is outrageous where "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Young v. Allstate Ins. Co.*, 119 Haw. 403, 425, 198 P.3d 666, 688 (2008), *quoting* Restatement (Second) of Torts § 46 comment (d). While "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not substantiate an IIED claim, a plaintiff may raise an IIED claim based upon his relationship with Defendants, as conduct can rise to the level of extreme and outrageous due to an

abuse of power and authority. *Id.* In this context, "extreme bullying tactics and other high pressure methods" can satisfy the outrageous conduct element. *Id.*, *see also Agarwal v. Johnson*, 25 Cal. 3d 932, 947, 603 P.2d 58 (1979), *disapproved of by White v. Ultramar, Inc.,* 21 Cal. 4th 563, 981 P.2d 944 (1999) (supervisor's racial insults, and his abuse of position to humiliate employee and secure termination for false reasons was outrageous).

As discussed, the evidence clearly demonstrates that Defendants engaged in a calculated, deliberate and coordinated effort with each other and other KPD and County employees to intentionally and purposefully retaliate against Plaintiff for his actions related to the Abbatiello Complaint. Defendants were the top brass of KPD, and as such, they were in a position of power over Plaintiff that they abused over the course of five (5) years. The nature and timing of the NDAs, internal investigations, orders and communications against Plaintiff establish that Defendants' conduct was extreme, outrageous and unlawful. Moreover, the Defendants high-level positions, as well as their authority over and involvement with the ARB process, heightens the egregiousness of their conduct. Plaintiff, a fellow KPD officer, was maliciously targeted by other KPD officers for doing nothing more than engaging in lawful, protected conduct.

Finally, Plaintiff has established that Defendants' conduct caused him to suffer extreme emotional distress. Perry MIO at 32; Asher MIO at 31-32.

## VI.   THE WHISTLEBLOWER CLAIM IS NOT TIME-BARRED

Section 378–62 of the Hawai'i Whistleblowers' Protection Act ("HWPA") states in relevant part:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because: (1) The employee, or a person acting on behalf of the employee, reports or is

> about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of: (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or (B) A contract executed by the State, a political subdivision of the State, or the United States[.]

Haw. Rev. Stat. § 378–62.

In *Griffin v. JTSI, Inc.*, this Court held:

> First, there must be a showing that the employee 'engaged in protected conduct' as it is defined by the HWPA. Second, the employer is required to take some adverse action against the employee. Third, there must be a causal connection between the alleged retaliation and the 'whistleblowing.' In other words, to meet the causal connection requirement, "[the] employer's challenged action must have been taken because the employee engaged in protected conduct."

654 F.Supp.2d 1122 (D. Haw. 2008), *citing Crosby v. State Dept. of Budget & Fin.,* 76 Hawai'i 332, 342, 876 P.2d 1300, 1310 (1994), *cert. denied,* 513 U.S. 1081, 115 S.Ct. 731, 130 L.Ed.2d 635 (1995) (some quotation marks omitted); *U.S. ex rel. Lockyer v. Hawaii Pacific Health,* 490 F.Supp.2d 1062, 1087 (D.Haw.2007).

With respect to proving a causal connection, the Hawai'i Supreme Court held that the employer bears the burden of negating causation once the employee makes an initial showing of causal connection. *Id.* There is no required level of substantiality, requiring only that the employee's protected conduct "played a role in the employer's action." *Griffin*, 654 F.Supp.2d 1132 n. 20 (citations omitted.)

To the extent Defendant County expands the analysis proffered by Defendants Perry and Asher to apply to Plaintiff's Whistleblower claim in Count III, its argument fails for the same reasons previously discussed.

First, the statute of limitations is tolled by the discovery rule. Second, there clearly exists a sufficient nexus between the protected activity (Plaintiff's actions related to the Abbatiello Complaint) and the retaliatory conduct, which began shortly

after Plaintiff reported the Abbatiello Complaint to Perry in 2011 [Perry's CCSMF:AMF Nos. 3 and then amplified significantly after Defendant Perry learned in January 2012, that he had become a subject of the investigation of the Abbatiello Complaint. Perry's CCSMF:AMF Nos. 11, 15, 30, 32, 46, 47; *compare* AMF No. 48 with AMF Nos. 49, 50, 51, 52, 53, 55.

Moreover, as discussed, the retaliation against Plaintiff continued well into the two-year period preceding the filing of his complaint. Plaintiff's stress leave was approved by the Mayor and the County Attorney on March 11, 2012, the day before Defendant Perry negotiated his return to KPD on March 12, 2012. Not only did Defendants continue to challenge his stress leave, they attempted as late as **January 2016**, to terminate Plaintiff or force him into a Return to Work Program. Perry CCSMF:AMF No. 55, Exhibits OO, PP and SS.

Plaintiff remains on this stress leave solely because the retaliatory conduct continues and prevents him from returning to KPD.

### VII. THE EVIDENCE DEMONSTRATES THAT NONE OF THE DEFENDANTS QUALIFY FOR IMMUNITY UNDER STATE OR FEDERAL LAW

In his Perry MIO, Plaintiff sets forth the applicable law concerning qualified immunity under federal law (Perry MIO at 5-8) and state law (Perry MIO at 8-9), which he incorporates herein. *See also* Asher MIO at 8-9. The evidence in this case clearly establishes that all Defendants knew the law prohibiting retaliation against employees for engaging in protected activity. *See, e.g.,* Perry MIO at 19-30. Moreover, after their violations of the law became patently obvious to attorneys and other government officials, Defendants were placed on notice – repeatedly – that their conduct targeting Plaintiff violated the law prohibiting retaliation for engaging in protected activity. Plaintiff's Opposition to Defendant Perry's Motion for Summary Judgement at pp. 28-29. There is simply no evidence to support

Defendants' assertion that they were unaware of the applicable law or that they did not knowingly violate it.

Finally, as discussed in Plaintiff's Perry MIO and Asher MIO, Defendants' self-serving statements professing to be motivated by reasons other than malice or an improper purpose are entirely controverted, and indeed, proven false by the documentary evidence, including the records of their emails and the various letters, memoranda and other documents they prepared. In addition, the evidence demonstrates that Defendants were given **no fewer than 10 notices** from attorneys and other officials, including the Equal Employment Opportunity Commission ("EEOC"), that their actions against Plaintiff were viewed as retaliatory. *Id*.; *see Kelly v. City of Oakland*, 198 F.3d 779, 785 (9th Cir. 1999), *as amended* (Jan. 12, 2000) ("Where unlawfulness is apparent, qualified immunity does not exist.").

Plaintiff has established that no official could have believed Defendants' conduct was objectively or subjectively reasonable in light of the multitude of warnings received regarding their conduct. At a minimum, there remains several questions of material fact regarding whether or not Defendants are entitled to the shield of qualified immunity.

### VIII. PLAINTIFF'S IIED CLAIM IS NOT BARRED BY THE WORKER'S COMPENSATION STATUTE

Defendant makes another puzzling argument in asserting that because "Plaintiff received worker's compensation benefits," his claim is barred by the "exclusivity provision of Hawaii's Worker's Compensation Law." SJ at 21. This argument fails because the instant action before the Court is not brought pursuant to Hawaii's Worker's Compensation Law. TAC, Documents 349, 357-1.

The argument also fails because the IIED claims asserted in Count IV involve retaliation against Plaintiff arising from his engagement in protected activity related to the harassment and discrimination experienced by a female KPD officer, who was

his subordinate. Perry's CCSMF:AMF Nos. 1, 4, Exhibit GG. Plaintiff's involvement with the Abbatiello Complaint began when he reported Defendant Asher's conduct to Defendant Perry. Perry's CCSMF:AMF No. 4, Exhibit P at 7 and 8; AMF Nos. 1 and 2, Exs. 10-12 to Exhibit V. It continued when, after Defendant Perry took no action for nine months, Plaintiff documented the complaint in writing. *Id.*, at No. 3, Exhibit P at 7-8, Exhibit R, PAff at ¶ 6-7, ¶ 11, Ex. 12 to Exhibit V at 1-2, Asher's CCSMF AMF No. 6, Exhibit 19. His involvement further continued when, after Defendant Perry's multiple attempts to dissuade Officer Abbatiello from pursuing the complaint, Plaintiff reported the complaint to the County Attorney. Perry's CCSMF:AMF No. 5, Exhibit P at 7, Exhibit U at 1, Exhibit DD, Exhibit FF. He followed up further by procuring the independent investigator (*id.* at No. 8, Exhibit BBB; Asher's CCSMF:AMF No. 9, Exhibits 20 and 21) and then participated in the independent investigation that sustained Officer Abbatiello's Complaint. Ex. 15 to Exhibit V.

Because the claims alleged by Plaintiff begin and end with the Abbatiello Complaint, Defendant County's argument is without merit.

## IX. CONCLUSION

For the foregoing reasons, Defendant County's SJ, as well as Defendant Perry's Motion, Defendant Asher's Joinder and all other joinders, should be denied in their entirety.

Dated:   Honolulu, Hawai'i, October 29, 2018.

 /s/   LORETTA A. SHEEHAN
LORETTA A. SHEEHAN
CLARE E. CONNORS
THOMAS M. OTAKE
LYLE S. HOSODA
Attorneys for Plaintiff