IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MARK N. BEGLEY,                    )    CIVIL 16-00350 LEK-RLP
                                   )
            Plaintiff,             )
                                   )
      vs.                          )
                                   )
COUNTY OF KAUAI, KAUAI POLICE      )
DEPARTMENT, DARRYL PERRY, ROY      )
ASHER, MICHAEL CONTRADES AND       )
DOE DEFENDANTS 16-100,             )
                                   )
            Defendants.            )
_____    )

**SUMMARY JUDGMENT ORDER; ORDER STAYING PLAINTIFF'S CLAIMS
RELATED TO THE RETURN TO WORK PROGRAM; AND ORDER DIRECTING
THE PARTIES TO SUBMIT FURTHER BRIEFING REGARDING THE STAY**

        On June 20, 2018, Defendant Darryl Perry ("Perry"), in

his individual capacity, filed his Motion for Summary Judgment

("Perry Motion").  [Dkt. no. 311.]  On June 27, 2018, Defendants

County of Kauai ("the County"); Kauai Police Department ("KPD");

Perry, in his official capacity; and Michael Contrades

("Contrades"), in his official capacity (collectively, "County

Defendants"), filed a substantive joinder in the Perry Motion

("County Joinder").[1]  [Dkt. no. 323.]  The Court finds these

matters suitable for disposition without a hearing pursuant to

_____

        [1] Defendant Roy Asher ("Asher"), in his individual capacity,
filed a motion for summary judgment ("Asher Motion") on June 20,
2018, and a joinder of simple agreement in the Perry Motion on
June 27, 2018.  [Dkt. nos. 312, 319.]  Asher, in his official
capacity, was one of the moving parties in the County Joinder.
On April 9, 2019, this Court approved the parties' stipulation to
dismiss, with prejudice, all claims against Asher, in his
individual capacity and his official capacity.  [Dkt. no. 542.]

Rule LR7.2(d) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). On January 29, 2019, this Court issued an entering order informing the parties of its rulings on the Perry Motion and the County Joinder ("1/29/19 EO Ruling"). [Dkt. no. 451.]

The parties were subsequently granted leave to file supplemental memoranda. [EO, filed 2/7/19 (dkt. no. 468).] The County Defendants filed their supplemental memorandum ("County Defendants' Supplement") on February 14, 2019. [Dkt. no. 474.] On February 19, 2019, Perry, in his individual capacity, filed a joinder of simple agreement in the County Defendants' Supplement, and, on February 20, 2019, Contrades, in his individual capacity, filed his joinders of simple agreement (collectively "Supplement Joinders"). [Dkt. nos. 479, 481.] Plaintiff filed his response to the County Defendants' Supplement and the Supplement Joinders ("Plaintiff's Supplement") on February 21, 2019. [Dkt. no. 487.] On March 14, 2019, this Court issued an entering order informing the parties of its rulings on the issues addressed in the supplements ("3/14/19 EO Ruling"). [Dkt. no. 525.] The instant Order supersedes the 1/29/18 EO Ruling and the 3/14/19 EO Ruling. For the reasons set forth below, the Perry Motion is denied and the County Defendants' Joinder is granted in part and denied in part. Further, in light of Begley v. County of Kaua`i, et al., NO. CAAP-16-0000192, 2018 WL 6259318 (Hawai`i Ct. App. Nov. 30,

2018) ("ICA Opinion"), the portions of Plaintiff's remaining state law claims based on acts related to the County's Return to Work Program ("RTWP") are stayed.

## BACKGROUND

Plaintiff worked for KPD from 1989 to 1994, and then from March 1996 to the present. In January 2011, Plaintiff, who was a Deputy Chief at the time, became the Assistant Chief of the Administrative and Technical Bureau ("ATB"). [Pltf.'s counterstatement of facts in supp. of Pltf.'s opp. to Perry Motion ("Pltf. Perry CSOF"), filed 10/29/18 (dkt. no. 389), Aff. of Mark N. Begley ("Pltf. Perry Aff.") at ¶ 2.] Plaintiff has been on stress leave, receiving workers' compensation benefits, since March 2012. [Id. at ¶ 14.]

## I. Officer Abbatiello's Incident with Asher and Plaintiff's Reports

Asher states that, sometime in January 2011, KPD Officer Darla Abbatiello expressed to him that she was interested in transferring to the vice section, but Asher points out that, pursuant to KPD policy, such requests had to be made in writing. The vice section is part of the Investigative Services Bureau ("ISB"), which Asher oversees. [Concise statement of facts in supp. of Asher Motion ("Asher CSOF"), filed 6/20/18 (dkt. no. 313), Decl. of Roy Asher ("Asher Decl.") at ¶¶ 2-3.] Asher therefore "made an 'x' with the index fingers of both hands and said, 'No, no, no.'" [Id. at ¶ 3.] At some point during

January 2011, Plaintiff learned about this "inappropriate gesture" by Asher. [Pltf. Perry Aff. at ¶ 10.] Plaintiff states the incident occurred on January 13, 2011. [Id.]

Plaintiff spoke with Asher and confirmed that Asher "made the gesture and that he did not want Officer Abbatiello in his Bureau because of the prior complaint she had made against the County of Kauai." [Id.] On January 24, 2011, Plaintiff verbally informed Perry about the incident, and Perry said "Asher's behavior could get KPD sued for 'big bucks' and he said he would take care of it." [Id. at ¶ 11.]

On August 22, 2011, Plaintiff had a meeting with Officer Abbatiello, and they discussed the incident with Asher. Id. at ¶ 5 & Exh. Q (Pltf.'s notes of meeting); see also Perry's concise statement of facts in supp. of Perry Motion ("Perry CSOF"), filed 6/20/18 (dkt. no. 310), Decl. of Darryl Perry ("Perry Decl.") at ¶ 4 (describing the timeline of the investigation and noting the date Plaintiff received Officer Abbatiello's complaint), Exh. 1 (email dated 1/26/12 to Plaintiff from Perry, setting forth timeline ("Timeline Email")). Plaintiff's notes about his meeting with Officer Abbatiello are consistent with Asher's description of the incident. See Pltf. Perry Aff., Exh. Q; Asher Decl. at ¶ 3. On October 3, 2011 Plaintiff completed a report to Perry regarding Officer Abbatiello's incident with Asher. [Perry Decl., Exh. 1.]

Officer Abbatiello submitted a County Policy Against

Discrimination and Harassment Complaint Form, dated October 18,

2011, regarding the incident with Asher and two other incidents.

[Suppl. Decl. of Clare E. Connors ("Suppl. Connors Decl."), filed

11/13/18 (dkt. no. 416), Exh. EE.[2]] Officer Abbatiello's form

and Plaintiff's oral and written reports about the incident will

be referred to collectively as the "Abbatiello Complaint."

On October 10, 2011, Perry emailed Plaintiff and

instructed him to hire an outside investigator to handle the

Abbatiello Complaint. Plaintiff responded: "Ok, we will work on

it." [Perry Decl. at ¶ 5; Suppl. decl. of Greg H. Takase re:

Perry Motion ("Suppl. Takase Decl."), filed 7/2/18 (dkt.

no. 326), Exh. 2 (email string between Perry and Plaintiff).[3]]

The Timeline Email states that, *inter alia*, on January 23, 2012,

Perry "inquired with Captain Henry Barriga on the status of the

investigator; pending, informed that Assistant Chief Begley is

working on it" and, on January 26, 2012, Perry made an inquiry

---

[2] All of the exhibits to the Supplemental Connors
Declaration are authenticated in the Plaintiff Perry Affidavit
and the Declaration of Lyle S. Hosoda attached to the Plaintiff
Perry CSOF ("Hosoda Perry Decl."). Plaintiff originally filed an
ex parte motion to file certain exhibits in support of the
Plaintiff Perry CSOF under seal, but the motion was denied.
[Dkt. nos. 393, 413.] Plaintiff filed the Supplemental Connors
Declaration to file those exhibits publicly.

[3] Perry originally filed an ex parte motion to file certain
exhibits in support of the Perry CSOF under seal, but the motion
was denied. [Dkt. nos. 309, 321.] Perry filed the Supplemental
Takase Declaration to file those exhibits publicly.

with Plaintiff and was informed that the "status was still pending." [Perry Decl., Exh. 1.] Perry states that Plaintiff's lack of response to the Timeline Email led Perry to believe "Plaintiff was still in the process of retaining an outside investigator." [Perry Decl. at ¶ 4.]

However, Plaintiff admits that, on November 15, 2011, he took steps to have G. Todd Withy, Esq., retained as the outside investigator to handle the Abbatiello Complaint. [Perry CSOF at ¶ 5; Pltf. Perry CSOF at ¶ 5 (stating Perry's ¶ 5 is admitted).] Mr. Withy was retained on December 29, 2011 under a purchase order, and a retainer was paid on January 23, 2012. [Perry Decl. at ¶ 4.]

Plaintiff asserts the adverse actions taken against him for his involvement with the Abbatiello Complaint included Plaintiff's "removal from Defendant Perry's calendar and his removal on December 16, 2011, from the position of Acting Deputy Chief." [Mem. in opp. to Perry Motion ("Perry Opp."), filed 10/29/18 (dkt. no. 387), at 14 (some citations omitted) (citing Hosoda Perry Decl., Exh. X (excerpts of trans. of 10/12/18 Asher depo.), Depo. Exh. 2 (email dated 2/15/11 to Plaintiff regarding the removal of Perry's calendar from Plaintiff's inbox)).]

Plaintiff wrote a memorandum, dated December 29, 2011, to Deputy County Attorney Marc Guyot regarding the Abbatiello

Complaint and how Perry was handling the complaint ("12/29/11 Guyot Memo"). [Pltf. Perry Aff., Exh. U.]

On January 25, 2012, Officer Abbatiello submitted a complaint the Kauai Police Commission ("Commission") primarily addressing Assistant Chief Alejandre Quibilan's ("AC Quibilan") hostile conduct toward her, but also noting that she "lost trust in" Perry because of his handling of her 2011 complaint about Asher ("Abbatiello Commission Complaint"). [Suppl. Connors Decl., Exh. GG (Abbatiello Commission Complaint) at 5.]

On January 30, 2012, Perry sent an email to the Commission members that: noted Asher and AC Quibilan were placed on administrative leave pending the outcome of Officer Abbatiello's complaints; stated the County Mayor put Perry on notice that morning that the investigation was looking into Perry's involvement with the complaint against AC Quibilan; requested that the Commission approve Perry's request to be placed on administrative leave with pay; and stated Contrades would be the Acting Chief and Plaintiff would be the Acting Deputy Chief during Perry's leave. [Perry Decl. at ¶ 7 & Exh. 5.] Perry asked to be placed on administrative leave "to protect the integrity of the investigation and not to interfere with" it. [Perry Decl. at ¶ 7.]

On February 1, 2012, Contrades sent an email to all of KPD stating that he had been appointed Acting Chief and Plaintiff

had been appointed Acting Deputy Chief.  However, Contrades stated, while he was in Virginia for training, Plaintiff would be Acting Chief.  [Perry CSOF at ¶ 7; Pltf. Perry CSOF at ¶ 7 (stating Perry's ¶ 7 is admitted).]  The email also stated Contrades would be returning to the office on March 19, 2012. [Perry CSOF, Decl. of Greg H. Takase ("Takase Decl."), Exh. 6.]

## II.  **Alleged Retaliation Against Plaintiff**

Plaintiff contends the retaliation against him began soon after he verbally informed Perry on January 24, 2011 of Asher's "inappropriate gesture" to Officer Abbatiello.  The alleged retaliation included the following actions and incidents relevant to the Perry Motion and the County Joinder.

### A.  **2/22/12 Incident**

On February 22, 2012, Contrades sent Plaintiff an email informing him that Perry was returning to work and instructing Plaintiff to ensure that Perry's weapon, badge, and identification card were returned to Perry.  [Perry CSOF at ¶ 8; Pltf. Perry CSOF at ¶ 8 (stating Perry's ¶ 8 is admitted in part, but not identifying what portions are disputed).[4]]  The incident

---

[4] Because Plaintiff did not identify the specific facts in Perry's paragraph 8 that he is disputing, all portions of paragraph 8 are deemed admitted.  See Local Rule LR56.1(g) ("For purposes of a motion for summary judgment, material facts set forth in the moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party.").  Similarly, all other statements of fact

(continued...)

which occurred after Plaintiff received that email ("2/22/12 Incident") is described in a KPD Notice of Disciplinary Action dated May 9, 2012 ("NDA-12-06"). [Perry Decl., Exh. 8.] NDA-12-06 states:

> SYNOPSIS: On February 22, 2012, Wednesday, at 0815 hrs. while at the Emergency Operations Center (aka Civil Defense), in the presence of Deputy County Attorney Julian Kollar, Captain Henry Berriga, Police Commission Chair Emle Kanekoa, and Police Commissioner Charlie Iona, you were insubordinate and disobeyed three (3) direct orders by Chief of Police Darryl Perry to reissue his police equipment and to return the keys to his office. Further, you yelled out disparaging remarks toward Chief Perry, "I know you like terminate me; I know your lies." Your behavior and inappropriate actions were contrary to and in direct violation of departmental directives.

[Id.]

Plaintiff asserts that, prior to Perry's return to work, Perry and Contrades discussed Perry's return with each other, as well as the Mayor's office, on February 21, 2012, but they did not inform Plaintiff about the discussions, even though Plaintiff was Acting Chief at the time. See Hosoda Perry Decl., Exh. W (excerpts of rough trans. of 10/23/18 Contrades depo.) at 115:4-19, 117:14-119:9. Plaintiff did not return Perry's equipment on February 22, 2012 because of prior orders from the Mayor's office. [Pltf. Perry Aff. at ¶ 13.] Plaintiff argues

_____

[4] (...continued)
that Plaintiff disputed in part but did not identify the specific parts in dispute are deemed admitted.

Perry and Contrades orchestrated the situation, knowing that Plaintiff would follow the Mayor's orders, and that Plaintiff's failure to return Perry's equipment would be deemed insubordinate.

**B.    <u>Internal Investigations</u>**

Perry submits evidence of the following internal investigations that were opened regarding Plaintiff:

-an investigation of a complaint by Contrades accusing Plaintiff of theft and padding Plaintiff's overtime for over a year (Administrative Investigation No. KPD-IA-12-04); [Perry Decl., Exh. 10 (letter dated 6/4/12 to Plaintiff from Sergeant Elliot Ke);]

-an investigation stemming from a May 22, 2012 memorandum by Asher regarding a complaint by an unidentified person who alleged Plaintiff disclosed "confidential and highly sensitive police information" to another unidentified person (Administrative Investigation No. KPD-IA-12-09); [<u>id.</u>, Exh. 11 (letter dated 6/4/12 to Plaintiff from Sergeant Ke);]

-Perry asked Dwight Takamine, of the State of Hawai`i ("State") Department of Labor and Industrial Relations ("DLIR"), Disability Compensation Division, to investigate Plaintiff's claim for medical stress leave because: Plaintiff did not have a covered injury because he sought stress leave in order to avoid the consequences of his insubordination in the 2/22/12 Incident; and Plaintiff violated the workers' compensation statutes by attending meetings on behalf of the

County and KPD from June 12 to October 11, 2012;[5] [id., Exh. 12 (letter dated 10/23/12);]

-Perry wrote to the County's Managing Director, Gary Heu, arguing that Plaintiff's workers' compensation claim should be invalidated, in light of the traveling Plaintiff did for the E911 Board meetings; [Perry Decl. at ¶ 10; Suppl. Takase Decl., Exh. 13 (letter dated 12/31/12);]

-Perry sent an email to Deputy County Attorney Guyot informing him about Perry's concerns that Plaintiff's workers' compensation claim may be fraudulent; [Perry Decl. at ¶ 11; Suppl. Takase Decl., Exh. 14 (letter dated 1/8/13);]

-Contrades issued a Notice of Disciplinary Action (NDA-13-03), dated March 19, 2013, alleging Plaintiff violated KPD Standards of Conduct by being untruthful to Perry about the hiring of an outside investigator for Officer Abbatiello's complaint; [Perry Decl., Exh. 16;]

-an internal investigation regarding an incident in which Plaintiff allegedly was aggressive and hostile toward Tommy Takeshita at an E911 Board meeting; [Perry Decl. at ¶ 12; Suppl. Takase Decl., Exh. 17 (print out of ADM2013-0170, KPD-IA-13-13 report, received 5/20/13);[6]]

-an investigation of a grievance filed by the Hawaii Government Employees Association alleging Plaintiff improperly denied

_____

[5] Perry states he wrote to Mr. Takamine because he believed Mr. Takamine was the head of the State agency that was handling Plaintiff's workers' compensation claim. It was, and still is, Perry's belief that Plaintiff took medical leave on March 11, 2012 because Perry was returning as Chief of Police on March 12, 2012, and Plaintiff wanted to avoid being disciplined for the 2/22/12 Incident. [Perry Decl. at ¶ 9.] Perry explains the letter refers to meetings on Oahu that Plaintiff attended for the E-911 Executive Board and Committee, also referred to as the Wireless Enhanced 911 Board ("E911 Board"), while he was on stress leave. [Id.]

[6] The parties agree that the result of the investigation into KPD-IA-13-13 was that there was no violation of the KPD Standards of Conduct by Plaintiff at the May 14, 2013 E911 Board meeting. [Perry CSOF at ¶ 19; Pltf. Perry CSOF at ¶ 19 (disputing Perry's ¶ 19 only to emphasize that it was Perry who conducted the investigation).]

personnel in the KPD Records Section payment for meals
during overtime work (Administrative Investigation
No. KPD-IA-13-09);[7] [Perry Decl., Exh. 15 (letter dated
6/4/13 to Plaintiff from Lieutenant Paul Applegate);]

-Contrades prepared a Notice of Disciplinary Action, dated
     June 5, 2013 (NDA-12-08), alleging Plaintiff failed to
     submit weekly reports to Contrades while Contrades was
     Acting Chief and Plaintiff was Acting Deputy Chief; [id.,
     Exh. 18;]

-Contrades prepared a Notice of Disciplinary Action, also dated
     June 5 (NDA-12-09), alleging Plaintiff failed to submit a
     timely report of the KPD Administrative Review Board's
     ("ARB") November 29, 2011 meeting regarding disciplinary
     cases involving KPD; [id., Exh. 19;]

-Contrades prepared a Notice of Disciplinary Action, also dated
     June 5 (NDA-12-10), alleging Plaintiff failed to notify
     Contrades of the bomb threat that the police dispatch
     received on March 7, 2012; [id., Exh. 20;]

-Contrades prepared a Notice of Disciplinary Action, also dated
     June 5 (NDA-13-05), alleging Plaintiff provided false
     information and revealed other sensitive and confidential
     information about potential KPD recruits during his
     interview with Mr. Withy; [id., Exh. 21;] and

-on October 13, 2013, Officer Abbatiello submitted a memorandum
     to Sergeant Ke claiming that, when a patrol officer pulled
     him over, Plaintiff "'badged' the officer," [Perry CSOF at
     ¶ 26; Pltf. Perry CSOF at ¶ 26 (admitting Perry's ¶ 26 in
     part but not identifying what part is disputed)].

     According to Perry, each Notice of Disciplinary Action

issued to Plaintiff had an evidentiary basis, and none were

issued in retaliation for Plaintiff's involvement with the

---

     [7] This investigation was closed as not sustained because
there was conflicting evidence about whether it was Plaintiff who
made the decision to deprive the records personnel of their meal
payments.  See Perry CSOF at ¶ 27; Pltf. Perry CSOF at ¶ 27
(disputing Perry's ¶ 27 in part but not identifying what part is
disputed); see also Perry Decl., Exh. 24 (memorandum dated
10/28/13 from Perry to Contrades).

Abbatiello Complaint. Perry also states none of his actions were motivated by malice or any improper purpose. Further, none of his actions were intended to inflict emotional distress or illness upon Plaintiff. [Perry Decl. at ¶¶ 16-18.]

The parties agree that: on May 14, 2012, Contrades sent Plaintiff a letter stating the ARB would be holding a hearing on May 29, 2012 regarding NDA-12-06, which addressed the 2/22/12 Incident; and senior KPD officials later decided to postpone the ARB hearing pursuant to Deputy County Attorney Nicholas Courson's advice that the proceeding should be delayed until Plaintiff returned from stress leave. [Asher CSOF at ¶¶ 24, 27; Pltf.'s concise counterstatement of material facts in supp. of Asher opp. ("Pltf. Asher CSOF"), filed 10/30/18 (dkt. no. 394), at ¶¶ 24, 27.] On May 24, 2012, while both Perry and Contrades were off-duty, and Asher was both Acting Chief of Police and Acting Chair of the ARB, Asher signed a letter to Plaintiff notifying him about the postponement of the ARB hearing. [Asher CSOF at ¶¶ 30-31; Pltf. Asher CSOF at ¶¶ 30-31.]

To date, the ARB has not convened to consider the Notices of Disciplinary Actions and administrative investigations pending against Plaintiff. Plaintiff has not received any discipline from the ARB. [Asher CSOF at ¶¶ 35-36; Pltf. Asher CSOF at ¶¶ 35-36.]

On June 4, 2013, Contrades sent Plaintiff a letter informing him the ARB would be going forward with misconduct charges relating to several Notices of Disciplinary Action and internal investigations. [Asher CSOF at ¶ 16; Pltf. Asher CSOF at ¶ 16; Asher CSOF, Decl. of Craig K. Shikuma ("Shikuma Decl."), Exh. E.] The charges were later held in abeyance, pursuant to an October 11, 2013 letter from Deputy County Attorney Courson. [Asher CSOF at ¶ 17; Pltf. Asher CSOF at ¶ 17; Shikuma Decl., Exh. F.]

### C. Attempts to Remove Plaintiff from the E911 Board

The E911 Board "is comprised of Deputy Chiefs and Assistant Chiefs from the outer islands as well as dispatchers and members from key service providers like Verizon." [Hosoda Perry Decl., Exh. VV (emails dated 4/8/16 from Contrades to Mauna Kea Trask) at COK 010973.] The E911 Board "control[s] funds designated for the operation of [Public Safety Answering Points]." [Id.] Plaintiff was appointed to the E911 Board and confirmed by the State Senate during the 2012 legislative session. His appointment was effective July 2, 2012. [Hosoda Perry Decl., Exh. 22 (letter dated 5/1/12 to Plaintiff from Governor Neil Abercrombie), Exh. 25 (email string forwarded to Perry and Contrades on 6/15/12 from Paul Ferreira, Deputy Police Chief, Hawai`i Police Department, regarding Plaintiff's status on the E911 Board) at COK01346.]

On April 24, 2012, Contrades told Perry that he scheduled a meeting with the Mayor to discuss replacing Begley with Acting Assistant Chief Sherwin Perez ("AC Perez") on the E911 Board, and Perry told Contrades that was a "[g]ood move." [Exhs. to Pltf.'s mem. in opp. to County Defs.' Suppl. Mem. ("Pltf.'s Additional Suppl. Mem. Exhs."), filed 3/1/19 (dkt. no. 502), Exh. 34 (emails between Contrades and Perry).[8]

On June 15, 2012, Perry sent an email to Managing Director Heu questioning Plaintiff's travel to attend E911 Board meetings during Plaintiff's stress leave. [Id., Exh. 41 (emails between Heu and Perry).] On August 8, 2012, Perry sent Managing Director Heu another email, noting that Plaintiff was still participating in E911 Board meetings on Oahu and opining that Perry's concerns about Plaintiff's continued participation were "not being taken seriously." [Id., Exh. 49.]

On June 26, 2012, Perry spoke with Tony Benabese, Boards and Commissions Manager, Office of the Governor, and Perry

---

[8] All of Plaintiff's Additional Supplemental Memorandum Exhibits are authenticated by the Declaration of Loretta A. Sheehan ("Supplemental Sheehan Declaration"), submitted with Plaintiff's statement of facts in support of his opposition to the County Defendants' supplemental memorandum ("County Defendants' Supplemental Memorandum" and "Plaintiff's Supplemental County CSOF"). [County Defs.' Suppl. Mem., filed 2/14/19 (dkt. no. 474); Pltf.'s Suppl. County CSOF, filed 2/21/19 (dkt. no. 488).] Plaintiff originally filed an ex parte motion to file certain exhibits in support of Plaintiff's Supplemental County CSOF under seal, but the motion was denied. [Dkt. nos. 489, 497.] Plaintiff filed the Additional Supplemental Memorandum Exhibits to file those exhibits publicly.

subsequently sent a letter regarding the conversation. Perry requested that Plaintiff's participation on the E911 Board be suspended until Plaintiff returned to work after his stress leave. Perry requested that AC Perez be appointed as a temporary replacement. [Id., Exh. 30 (undated letter to Mr. Benabese from Perry).] During the efforts to have Plaintiff removed from the E911 Board, KPD kept him under surveillance when he attended board meetings. See, e.g., Pltf.'s Additional Suppl. Mem. Exhs., Exh. 49 (email dated 8/8/12 to Managing Director Heu from Perry stating AC Perez "will be submitting a report documenting his observations while at the meeting in which Begley was observed in attendance"); Suppl. Sheehan Decl., Exh. 52 (email dated 1/18/13 from Perry to Managing Director Heu, stating Perry "will be documenting [Plaintiff's] activities, as they are being reported to [Perry] with respect to the E911 Committee and Board meetings while he is medically disqualified from work and out on Worker's Compensation/Medical Leave").

On multiple occasions in September 2012, Perry contacted the Governor's office regarding "Work Comp Irregularities" related to Plaintiff's involvement in the E911 Board. [Id., Exh. 8 (email string between Perry and Mr. Benabese) at COK00087.] On October 1, 2012, Mr. Benabese responded: "The AG has found that Mr. Begley can still serve on the Wireless 911 Board even though he is on workman's comp."

[<u>Id.</u>] Perry wrote back: "Please be sure to keep your notes and any communications in this matter as there may be repercussions in the future . . . . Hopefully the [Deputy Attorney General] has the appropriate statutes or rules to support his/her opinion." [<u>Id.</u> at COK00086.] Mr. Benabese clarified that receiving workers' compensation benefits did not, by itself, constitute cause to remove someone from a board. [<u>Id.</u>] He also stated:

> Mr. Begley was appointed by to [sic] Governor per Hawaii Revised Statutes, 26-34. Before anyone else can be appointed to the Kauai Public Safety Answering Points seat, the current member (Mr. Begley) must be removed. For Governor to remove anyone from a board or commission, the Governor must show cause per HRS 26-34(d). From what the AG's know and the information that they have, there is no cause to warrant his removal and Mr. Begley has been a contributing member at the meetings.

[<u>Id.</u>]

The attempts to remove Plaintiff from the E911 Board continued in 2016. [Hosoda Perry Decl., Exh. TT (email exchange between Deputy Chief Ferreira and Contrades regarding the replacement of Plaintiff when his term ended on 6/30/16), Exh. UU (email dated 3/21/16 from Contrades to Perry regarding modification of a draft letter to Courtney T. Tagupa, Executive Director of the E911 Board, to be signed by Perry, nominating Contrades to replace Plaintiff).] When the Mayor declined to sign a document nominating Contrades to the E911 Board and

instead forwarded the document to the County Attorney for review,

Contrades responded:

> I am not sure what the issue is with the Mayor not
> signing the nomination.  The E911 Board is not
> supporting another term for Begley and the desire
> of the Chief is for someone who has actual
> knowledge of the Public Safety Answering Point
> (PSAP) to represent Kauai because we have not been
> properly represented for the last 4 years. . . .
> I was the one selected.  This has no bearing on
> his pending cases and needs to be pushed through
> immediately or we may lose our nomination and our
> voice on a board that has given us millions of
> dollars and sustains our 911 operations. . . .

[Id., Exh. VV (emails dated 4/8/16 from Contrades to Mauna Kea

Trask, forwarding emails regarding nomination document) at

COK 010973.]

### D.   **Challenges to Plaintiff's Workers' Compensation Claim**

Brandvold Ku, Inc. ("BKI") is the insurance adjusting

company that handled Plaintiff's workers' compensation claim, and

Ele Wood was the Senior Adjuster who was assigned to the claim.

[Pltf.'s Additional Suppl. Mem. Exhs., Exh. 2 (WC-1 Employer's

Report of Industrial Industry, date 3/14/12).]  Perry sent

Ms. Wood multiple letters contesting the validity of Plaintiff's

claim.  [Id., Exh. 3 (letter dated 4/10/12); Hosoda Perry Decl.,

Exh. BB (excerpts of trans. of 2/2/17 depo. of Alfred Castillo,

Jr., vol. II), Depo. Exhs. 7-12 (letters dated 6/22/12, 7/16/12,

8/10/12, 9/17/12, 10/16/12, 11/15/12).]  The County Attorney's

Office warned Perry that his letters to Ms. Wood were "highly

inappropriate given the nature of" Plaintiff's allegations and

Perry's involvement in them. [Suppl. Connors Decl., Exh. BB-5 (letter dated 6/22/12 to Perry from Deputy County Attorney Guyot) at 1.] Perry was advised "to have no further involvement in the administration of [Plaintiff's] workers' compensation claim[]" and that, "[d]oing so would not only put the County in potential harm, but possibly [Perry] in [his] individual capacity as well." [Id. at 2.] Perry, however, sent multiple letters to Ms. Wood after this admonishment.

Perry also sent letters to Dwight Takamine, who was with the Department of Labor and Industrial Relations ("DLIR"), Disability Compensation Division, questioning the validity of Plaintiff's workers' compensation claim. [Perry Decl., Exh. 12 (letter dated 10/23/12); Pltf.'s Additional Suppl. Mem. Exhs., Exh. 11 (letter dated 11/15/12).] Perry states he wrote to Mr. Takamine because he believed Mr. Takamine was the head of the State agency that was handling Plaintiff's workers' compensation claim and he believed (and still believes) Plaintiff's claim was fraudulent. [Perry Decl. at ¶ 9.] Deputy County Attorney Guyot informed Perry that the DLIR was unable to communicate directly with Perry on the matter. [Pltf.'s Additional Suppl. Mem. Exhs., Exh. 51 at COK 009860 (letter to Perry dated 1/3/13).] Deputy County Attorney Guyot advised Perry that the County Attorney's Office referred the matter to the Commission because "previous notices about [Perry's] similar conduct from the [DLIR] have not

curtailed [Perry's] continued inappropriate involvement in on-going Workers Compensation claims." [Id.]

Perry also sent letters challenging the validity of Plaintiff's workers' compensation claim to Managing Director Heu and to Deputy County Attorney Guyot. [Suppl. Takase Decl., Exh. 13 (letter to Heu, dated 12/31/12), Exh. 14 (letter to Guyot, dated 1/8/13).]

On May 26, 2014, the Mayor and the Commission Chair sent Perry a letter stating: the Equal Employment Opportunity Commission ("EEOC") reached determinations in six complaints filed by KPD officers;[9] and "[t]he EEOC Letters of Determination include a warning regarding continued retaliation." [Hosoda Perry Decl., Exh. NN.] The letter reminded Perry "to maintain [his] professionalism standard of conduct." [Id.]

E.  **Return to Work Program**

The County Department of Personnel Services sent Plaintiff a letter dated November 24, 2014, stating Plaintiff's psychologist informed the office that Plaintiff would not able to return to work at KPD. The letter included information about the RTWP. [Pltf.'s Additional Suppl. Mem. Exhs., Exh. 15 (letter, without enclosures); Suppl. Sheehan Decl., Exh. 58 (letter dated

---

[9] The officers are not identified in the letter. In 2012, Plaintiff filed a discrimination and retaliation complaint with the EEOC against Perry, Contrades, Asher, and others. See Pltf. Perry Aff., Exh. P (Equal Employment Opportunity Commission Intake Questionnaire, signed by Plaintiff on 10/2/12).

4/28/14 to Dianne Gerard, Ph.D., from Ele Wood regarding

Plaintiff's work restrictions).[10]]  Plaintiff was instructed to

attend a meeting on December 19, 2014 "to review [his] employment

status and explain [his] rights, responsibilities, and options."

[Pltf.'s Additional Suppl. Mem. Exhs., Exh. 15 at COK01402.]

On June 16, 2015, Plaintiff sued the County, KPD, and

others in state court, seeking, *inter alia*, an injunction

preventing them from forcing him into the RTWP ("RTWP Action").

[Suppl. Sheehan Decl., Exh. 18 (complaint in the RTWP Action

("RTWP Complaint")).]  On October 23, 2015, the state court

issued a preliminary injunction prohibiting the defendants from

requiring Plaintiff to decide whether to participate in the RTWP

and from taking any action to terminate Plaintiff's employment.

[Hosoda Perry Decl., Exh. SS (Order Granting Pltf.'s Motion for

Preliminary Injunction).]  The state court later dismissed the

action, but granted Plaintiff's oral motion for a stay pending

appeal.  [Suppl. Sheehan Decl., Exh. 20 (order filed 12/31/15).]

Thus, the preliminary injunction remained in place.

Soon thereafter, Perry, Contrades, Janine Rapozo, the

County's Director of Human Services, and others, worked on a

draft letter from Perry to Plaintiff terminating Plaintiff's

---

[10] Dr. Gerard returned the letter, indicating that
Plaintiff's restrictions were permanent, "unless major
administrative/procedural changes are made at Kauai Police Dept."
[Suppl. Sheehan Decl., Exh. 58.]

employment because of his failure to comply with the terms of the RTWP. [Hosoda Perry Decl., Exh. OO (email dated 1/6/16 from Contrades to Ms. Rapozo and others, forwarding an email from Perry to Contrades with two drafts of letter to Plaintiff), Exh. PP (emails between Contrades and Perry dated 1/6/16 regarding drafts of the letter).] One of the recipients of the draft letter, Deputy County Attorney Courson, reminded Contrades and Ms. Rapozo that the injunction in the RTWP Action was still in effect and, even if they agreed on the language of the letter, it could not be issued until the period described by the state court passed. [Id., Exh. OO at COK 010739.] Perry issued the termination letter to Plaintiff on February 2, 2016. [Suppl. Sheehan Decl., Exh. 23.] In the RTWP Action, the state court issued sanctions against the County because the termination letter violated the state court's prior orders. [Id., Exh. 24 (order filed on 4/11/16).] On November 30, 2018, the Hawai`i Intermediate Court of Appeals ("ICA") issued its memorandum opinion in the appeal from the judgment in the RTWP Action ("RTWP ICA Opinion"). Begley v. Cty. of Kaua`i, NO. CAAP-16-0000192, 2018 WL 6259318 (Hawai`i Ct. App. Nov. 30, 2018).

While the appeal was pending, Dr. Gerard informed KPD that Plaintiff could return to his prior position, in light of Perry's retirement. Plaintiff was therefore terminated from the RTWP and placed on leave with pay, pending a fitness-for-duty

("FFD") evaluation.  [Suppl. Sheehan Decl., Exh. 25 (letter dated 11/21/18 to Plaintiff's counsel from Ms. Rapozo), Exh. 26 (similar letter dated 11/9/18 to Plaintiff).]  Plaintiff attended his FFD evaluation with Dr. David Corey on December 13, 2018.  At the FFD evaluation, Plaintiff received a copy of a letter dated July 8, 2013, signed by Perry, informing Plaintiff of the outcome of several internal investigations against him and the resulting sanctions, including termination ("7/8/13 Termination Letter").  [Pltf.'s Suppl. County CSOF, Decl. of Mark N. Begley ("Suppl. Pltf. Decl.") at ¶¶ 1-2; Pltf.'s Additional Suppl. Mem. Exhs., Exh. 14 (7/8/13 Termination Letter).]  That was the first time Plaintiff saw the 7/8/13 Termination Letter.  [Suppl. Pltf. Decl. at ¶ 2.]  As of February 20, 2019, Plaintiff had not been informed of his return date.  [Id. at ¶ 3.]

III. **The Instant Case**

       Plaintiff filed this action on June 27, 2016.  The operative pleading is Plaintiff's Third Amended Complaint, filed on August 31, 2018.  [Dkt. no. 349.]  It alleges the following claims:

-retaliation, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a) and Haw. Rev. Stat. Chapter 368 and § 378-2(a)(2), against the County and KPD ("Count I");

-aiding and abetting retaliation, under Chapter 368 and § 378-2(a)(3), against Perry, Asher, and Contrades, each in his individual capacity ("the Individual Defendants" and "Count II");

-violation of the Hawai`i Whistleblowers' Protection Act ("HWPA"), Haw. Rev. Stat. § 378-61, *et seq.*, against the County and KPD ("Count III"); and

-intentional infliction of emotional distress ("IIED") against all of the defendants ("Count IV").

Although the Perry Motion and the County Joinder were filed before the filing of the Third Amended Complaint, this Court CONSTRUES them as addressing the claims in the Third Amended Complaint because: 1) the Second Amended Complaint, [filed 2/15/18 (dkt. no. 201),] and the Third Amended Complaint allege the same claims; and 2) the changes between the Second Amended Complaint and the Third Amended Complaint involved Plaintiff's claims against Contrades, in his individual capacity, which are not at issue in the Perry Motion and the County Joinder, and the timeliness of the IIED claim. See Order Granting in Part and Denying in Part Motion to Dismiss and Substantive Joinder, filed 7/31/18 (dkt. no. 340) ("7/31/18 Order"), at 19-20 (dismissing, without prejudice, Counts II and IV of the Second Amended Complaint against Contrades and Count IV of the Second Amended Complaint against the County Defendants without prejudice).[11]

The Perry Motion seeks summary judgment in favor of Perry as to all claims against him. The County Joinder seeks summary judgment as to all claims against the County Defendants.

_____

[11] The 7/31/18 Order is also available at 2018 WL 3638083.

24

**I.   Perry Motion**

    **A.   Count II - Violations of § 378-2(a)(3)**

Haw. Rev. Stat. § 378-2 states, in pertinent part:

(a)  It shall be an unlawful discriminatory practice:

> (1)  Because of race, sex including gender identity or expression, sexual orientation, age, religion, color, ancestry, disability, marital status, arrest and court record, or domestic or sexual violence victim status if the domestic or sexual violence victim provides notice to the victim's employer of such status or the employer has actual knowledge of such status:
>
> > (A)  For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment;
> >
> > .  .  .  .
>
> (2)  For any employer, labor organization, or employment agency to discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part; [and]
>
> (3)  For any person, whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the discriminatory practices forbidden by this part, or to attempt to do so[.]

This Court has ruled that § 378-2(a)(3) allows a plaintiff to bring claims against individual defendants. [Order: Denying Defendant Michael Contrades's Motion to Dismiss etc., filed 12/27/18 (dkt. no. 434) ("12/27/18 Order"), at 7 (citing 7/31/18 Order, 2018 WL 3638083, at *4).[12]] This Court has stated that, under § 378-2(a)(3), "a person aids and abets an unlawful discriminatory practice of another if he knows that the practice constitutes a breach of the other's duty and if he provides substantial assistance or encouragement with respect to the practice." [Order Granting in Part and Denying in Part Def.'s Motion to Dismiss Portions of Pltf.'s First Amended Complaint, filed 1/4/18 (dkt. no. 198) ("1/4/18 Order"), at 14 (citation omitted).[13]]

The burden shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), applies to § 378-2(a)(3) claims. <u>See</u> <u>Schefke v. Reliable Collection Agency, Ltd.</u>, 96 Hawai`i 408, 426, 32 P.3d 52, 70 (2001).

> Under th[e <u>McDonnell Douglas</u>] analysis, plaintiffs must first establish a prima facie case of employment discrimination. <u>Noyes v. Kelly Servs.</u>, 488 F.3d 1163, 1168 (9th Cir. 2007). If plaintiffs establish a prima facie case, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." <u>Chuang v. Univ. of Cal.</u>

---

[12] The 12/27/18 Order is also available at 2018 WL 6816045.

[13] The 1/4/18 Order is also available at 2018 WL 295799.

26

> Davis, Bd. of Trs., 225 F.3d 1115, 1123–24 (9th
> Cir. 2000). If defendant meets this burden,
> plaintiffs must then raise a triable issue of
> material fact as to whether the defendant's
> proffered reasons for their terminations are mere
> pretext for unlawful discrimination. Noyes, 488
> F.3d at 1168; see also Coleman v. Quaker Oats Co.,
> 232 F.3d 1271, 1282 (9th Cir. 2000) (plaintiffs
> must "introduce evidence sufficient to raise a
> genuine issue of material fact" as to pretext).

Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155-56 (9th Cir.

2010) (some alterations in Hawn) (citation omitted).

Count II alleges Perry and Contrades aided and abetted

retaliation. [Third Amended Complaint at pg. 49.] The elements

of a prima facie case of retaliation in violation of

§ 378-2(a)(2) are:

> (a) the plaintiff (i) has opposed any practice
> forbidden by HRS chapter 378, Employment
> Practices, Part I, Discriminatory Practices or
> (ii) has filed a complaint, testified, or assisted
> in any proceeding respecting the discriminatory
> practices prohibited under this part, (b) his or
> her employer, labor organization, or employment
> agency has . . . discharged, expelled, or
> otherwise discriminated against the plaintiff, and
> (c) a causal link has existed between the
> protected activity and the adverse action[.]

Lales v. Wholesale Motors Co., 133 Hawai`i 332, 356, 328 P.3d

341, 365 (2014) (some alterations in Lales) (citation and

internal quotation marks omitted).

As to the first element, Plaintiff made an oral and a

written report to Perry regarding Asher's allegedly inappropriate

gesture to Officer Abbatiello. Asher's gesture indicated that he

did not want Officer Abbatiello in the vice section because of a

previous complaint she made against the County. [Pltf. Perry Aff. at ¶¶ 10-11; Perry Decl., Exh. 1 (Timeline Email).] Thus, Plaintiff was reporting what appeared to be an act of retaliation against Officer Abbatiello for protected activity, in violation of § 378-2(a)(2). Plaintiff has also presented evidence that he took various other actions to assist in the investigation into the Abbatiello Complaint, including, *inter alia*: securing an outside investigator to handle the Abbatiello Complaint; [Pltf. Perry Aff. at ¶ 8 & Exh. T (State of Hawaii Record of Small Purchase form, dated 11/30/11, for the retention of Mr. Withy);] reporting the Abbatiello Complaint to the County Attorney's Office and raising concerns about Perry's involvement in the investigation; [Pltf. Perry Aff., Exh. U (12/29/11 Guyot Memo); and giving a statement to Mr. Withy during the investigation, [Suppl. Connors Decl., Exh. V-15 (Report of Investigation on Issues in Kauai Police Dept. for Cty. of Kauai, dated 6/28/12, by G. Todd Withy, Esq. ("Withy Report")) at 4 (listing Plaintiff as one of the people who gave witness statements)].

As to the second element, Plaintiff presented evidence that his employer discriminated against him after his protected activity. Numerous internal investigations against Plaintiff were initiated while the investigation into the Abbatiello Complaint was pending. See *supra* Background Section II.C. There is evidence that the charges against Plaintiff were sustained in

28

every investigation except one, and disciplinary action was specified, including termination, but Plaintiff was not informed of the results. [Pltf.'s Additional Suppl. Mem. Exhs., Exh. 14.] There is also evidence of numerous actions to remove Plaintiff from his appointed position on the E911 Board, beginning in June 2012, and to challenge his workers' compensation claim, beginning in April 2012. See supra Background Section II.E, F.

The causal link between Plaintiff's protected activity and the discrimination against him can be inferred from the circumstantial evidence. See Dawson v. Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011) (stating, in a Title VII case, "[t]he causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and adverse action").[14] Perry was aware of Plaintiff's protected activity because Plaintiff reported the Abbatiello Complaint to him and Perry instructed Perry to arrange for an outside investigator to handle the matter. Further, the alleged retaliation against Plaintiff occurred while the investigation into the Abbatiello Complaint was pending.

---

[14] In interpreting § 378-2, the Hawai`i Supreme Court has looked "to interpretations of analogous federal laws by the federal courts for guidance," and has, in some instances, adopted the same test for a § 378-2 claim as the test used by federal courts for the similar Title VII claim. Schefke, 96 Hawai`i at 425-26, 32 P.3d at 69-70 (adopting federal test for retaliation claims) (citations omitted).

Viewing the record in the light most favorable to
Plaintiff, see Crowley v. Bannister, 734 F.3d 967, 976 (9th Cir.
2013), this Court concludes that Plaintiff has established the
elements of his prima facie case for § 378-2(a) retaliation.
Further, he has established his prima facie case for his
§ 378-2(a)(3) claim against Perry because Plaintiff has presented
evidence that Perry and Contrades worked together in many of the
instances of alleged discrimination, and Perry attempted to
incite, compel, or coerce others to remove Plaintiff from the
E911 Board and to deny Plaintiff's workers' compensation claim.
See Maizner v. Haw., Dep't of Educ., 405 F. Supp. 2d 1225, 1239
(D. Hawai`i 2005) (stating § 378-2(a)(3) requires "at least two
persons (someone who incites, compels, or coerces, and some other
person who is incited, compelled, or coerced)"). Thus, Perry
"provide[d] substantial assistance or encouragement with respect
to" the alleged retaliatory scheme against Plaintiff. See 1/4/18
Order, 2018 WL 295799, at *5.

Perry has presented testimony that there was an
evidentiary basis for all of the internal investigations
initiated against Plaintiff and that they were not initiated in
retaliation for Plaintiff's involvement with the Abbatiello
Complaint. [Perry Decl. at ¶ 15.] He has also presented
testimony that he believed Plaintiff's workers' compensation was
fraudulent and he therefore had a legitimate reason to present

requests that Plaintiff's claim be denied and that Plaintiff be removed from the E911 Board. [Id. at ¶ 9.] However, the issue of whether Perry had legitimate, non-retaliatory reasons for his actions or whether his reasons are merely pretext requires weighing the evidence and assessing credibility, particularly in light of Perry's vehemence and persistence in those requests, even after Perry was warned by the County Attorney's Office and others that such requests were improper. This Court cannot weigh the evidence or make credibility determinations on summary judgment. See Blankenhorn v. City of Orange, 485 F.3d 463, 470 (9th Cir. 2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1986)). This Court therefore rejects Perry's argument that Plaintiff has failed to establish the elements of his § 378-2(a)(3) claim.

### B. **Count IV – IIED**

#### 1. **Time-bar**

A two-year statute of limitations applies to IIED claims, and the discovery rule applies. 1/4/18 Order, 2018 WL 295799, at *2. Perry argues that Plaintiff's IIED claim must be limited to incidents that occurred within two years prior to the filing of this action on June 27, 2016. Plaintiff responds that otherwise-time-barred incidents can still be used to support his IIED claim because of the discovery rule. He contends that, although he was aware of discrete retaliatory acts, he was not,

31

and could not have reasonably been, aware of: "the extent of coordination and the degree of calculated intent to harm him" and the outrageousness of the retaliatory scheme as a whole. [Perry Opp. at 32-33.] For example, it was not until 2016 document productions from the County that Plaintiff discovered:

-an April 9, 2012 email chain between Contrades and Deputy Chief Ferreira regarding the attempt to have Plaintiff removed from the E911 Board; [Hosoda Perry Decl. at ¶ 31 & Exh. XX;]

-the April 24, 2012 email correspondence between Perry and Contrades about Contrades's meeting with the Mayor to discuss removing Plaintiff from the E911 Board; [Hosoda Perry Decl. at ¶ 32 & Exh. YY;]

-an October 4, 2013 email from Perry to Ms. Rapozo, with copies to Contrades and Asher, describing an incident on October 3, 2013 in which Plaintiff was observed by plain-clothed officers addressing crimes against property in Kawaihau/Hanalei;[15] [Hosoda Perry Decl. at ¶ 24 & Exh. QQ;] and

-an October 8, 2013 letter from Perry to the chairperson of the State Department of Land and Natural Resources reporting an unsubstantiated anonymous tip that Plaintiff was involved in the clearing of certain trees and plants, [Hosoda Perry Decl. at ¶ 25 & Exh. RR].

Viewing this evidence, and the other evidence in the current record, in the light most favorable to Plaintiff, this Court finds there are genuine issues of material fact as to whether the otherwise time-barred portions of Plaintiff's IIED claim against Perry are saved by the discovery rule. This Court therefore rejects Perry's argument that he is entitled to summary judgment

---

[15] Plaintiff contends this email shows that the defendants were conducting surveillance on him while he was on workers' compensation leave.

on the ground that the portions of Plaintiff's IIED claim based on incidents which occurred more than two years before he filed this action are time-barred. The Court now turns to the merits of Plaintiff's IIED claim against Perry.

2.  **Elements**

This Court has previously stated:

> The elements of an IIED claim are: "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." Young v. Allstate Ins. Co., 119 Hawai`i 403, 429, 198 P.3d 666, 692 (2008). "The term 'outrageous' has been construed to mean without cause or excuse and beyond all bounds of decency." Enoka v. AIG Hawaii Ins. Co., 109 Hawai`i 537, 559, 128 P.3d 850, 872 (2006) (citation and internal quotation marks omitted)). "The question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable people may differ on that question it should be left to the jury." Young, 119 Hawai`i at 429, 198 P.3d at 692 (citation and quotation marks omitted).

[Order Granting in Part and Denying in Part Defs.' Motion to Dismiss Portions of Pltf.'s First Amended Complaint, filed 1/16/18 (dkt. no. 199) ("1/16/18 Order"), at 9.[16]]

Perry's actions – including initiating internal investigations against Plaintiff and sending letters and emails to have Plaintiff removed from the E911 Board and to challenge Plaintiff's workers' compensation claim – were intentional.

---

[16] The 1/16/18 Order is also available at 2018 WL 443437.

Plaintiff has also presented evidence that the retaliatory scheme, which Perry's actions were a part of, caused him extreme emotional distress. [Suppl. Connors Decl., Exh. KKK (excerpts of report of Plaintiff's independent psychiatric examination by George D. Bussey, M.D., dated 9/11/18).]

As to the outrageousness element, there is sufficient evidence in the record – in particular, Perry's continued efforts to remove Plaintiff from the E911 Board and to challenge Plaintiff's workers' compensation claim even after Perry's efforts were rejected or he was warned repeatedly that his actions were inappropriate – that reasonable people could differ on the issue of whether Perry's conduct was outrageous. The issue must therefore be left to the jury. This Court rejects Perry's argument that he is entitled to summary judgment as to Count IV because Plaintiff has failed to establish the elements of his IIED claim.

### C. **Qualified/Conditional Privilege**

Finally, Perry argues he is entitled to summary judgment as to both Counts II and IV based on qualified/conditional privilege. The applicable analysis of whether a nonjudicial government official is entitled to a qualified or conditional privilege from liability for tort claims is set forth in the 7/31/18 Order. 2018 WL 3638083, at *6. Ultimately, the plaintiff must "demonstrate by clear and

convincing proof that the official was motivated by malice and not by an otherwise proper purpose." Id. (some citations omitted) (citing Towse v. State of Haw., 647 P.2d 696, 702–03 (Haw. 1982); Medeiros v. Kondo, 522 P.2d 1269, 1272 (Haw. 1974)). Like the issue of outrageousness, the issue of malice is generally an issue of fact for the jury, but a court can rule on the issue as a matter of law "when the existence or absence of malice is demonstrated to the court via uncontroverted affidavits or depositions." Id. (some citations omitted) (citing Runnels v. Okamoto, 525 P.2d 1125, 1129 (Haw. 1974)). As stated in the analysis of the issues of legitimate, non-retaliatory reasons and pretext, the evidence in this case raises issues of weight and credibility that cannot be determined on summary judgment: specifically, Perry's continued efforts to remove Plaintiff from the E911 Board and to challenge Plaintiff's workers' compensation claim even after Perry's efforts were rejected or he was warned repeatedly that his actions were inappropriate. Because there is insufficient "uncontroverted" evidence in this case, this Court cannot rule on Perry's qualified/conditional privilege defense on summary judgment.

Because there are genuine issues of material fact, Perry is not entitled to summary judgment as to either Count II or Count IV. See Fed. R. Civ. P. 56(a). The Perry Motion is therefore denied, in its entirety.

## II.  <u>County Joinder</u>

### A.  <u>Count I - Retaliation Claims</u>

As previously noted, the analysis applicable to a
Title VII retaliation claim is the same as the analysis
applicable to a § 378-2(a)(2) retaliation claim.  <u>See</u> <u>Schefke</u>, 96
Hawai`i at 425-26, 32 P.3d at 69-70.  For the same reasons set
forth in the discussion of Plaintiff's § 378-2(a)(3) claim
against Perry, this Court finds that: 1) Plaintiff has
established his prima facie case for both his Title VII
retaliation claim and his § 378-2(a)(2) retaliation claim against
the County Defendants; and 2) there are genuine issues of
material fact as to the issues of whether the County Defendants
had legitimate, non-retaliatory reasons for their actions or
whether those reasons were merely pretext.  To the extent the
County Defendants argue they are entitled to summary judgment as
to Plaintiff's Title VII retaliation claim and his § 378-2(a)(2)
retaliation claim because Plaintiff failed to establish the
elements of his prima facie case, the County Joinder is denied.

### B.  <u>Count III - HWPA Claim</u>

#### 1.  <u>Timeliness</u>

HWPA claims are subject to a two-year statute of
limitations.  Haw. Rev. Stat. § 378-63(a) ("A person who alleges
a violation of this part may bring a civil action for appropriate
injunctive relief, or actual damages, or both within two years

after the occurrence of the alleged violation of this part."). A HWPA violation occurs at the time of each allegedly retaliatory act. See, e.g., Lopes v. Kapiolani Med. Ctr. for Women & Children, 410 F. Supp. 2d 939, 952 (D. Hawai`i 2005). Because the "occurrence rule" applies to HWPA claims, the "discovery rule" does not apply. See Galima v. Ass'n of Apartment Owners of Palm Court ex rel. Bd. of Dirs., CIVIL 16-00023 LEK-KSC, 2018 WL 6841818, at *11 (D. Hawai`i Dec. 31, 2018) (noting that, because the occurrence rule applies to Haw. Rev. Stat. Chapter 480 claims alleging unfair or deceptive acts or practices, the discovery rule does not apply). Even assuming that the limitations period for HWPA claims is subject to tolling, Plaintiff has not presented any evidence that would support tolling in this case. This Court therefore concludes, as a matter of law, that the portions of Plaintiff's HWPA claim based on acts that occurred more than two years prior to the filing of this action are time-barred. Summary judgment is granted in favor of the County Defendants as to those portions of Count III. The Court now turns to the merits of the timely portions of Count III.

### 2. Elements

HWPA provides, in pertinent part:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

>     (1)  The employee . . . reports or is about
>     to report to the employer, or reports or is
>     about to report to a public body, verbally or
>     in writing, a violation or a suspected
>     violation of:
>
> >     (A)  A law, rule, ordinance, or
> >     regulation, adopted pursuant to law of
> >     this State, a political subdivision of
> >     this State, or the United States[.]

Haw. Rev. Stat. § 378-62(1)(A).  This district court has
recognized that:

>     To establish a prima facie claim under the
>     HWPA, [the plaintiff] must prove that (1) he
>     engaged in a protected activity, (2) he was
>     subjected to an adverse employment action, and
>     (3) the adverse employment action resulted because
>     of his participation in the protected activity.
>     See Cambron v. Starwood Vacation Ownership, Inc.,
>     945 F. Supp. 2d 1133, 1143 (D. Haw. 2013); Griffin
>     v. JTSI, Inc., 654 F. Supp. 2d 1122, 1130-32 (D.
>     Haw. 2008) (citing Crosby v. State Dep't of Budget
>     & Fin., 76 Hawai`i 332, 876 P.2d 1300, 1310
>     (1994)). . . .

Henao v. Hilton Grand Vacations Co., CIVIL NO. 16-00646 DKW-RLP,

2017 WL 4479253, at *7 (D. Hawai`i Oct. 6, 2017).

As previously noted, Plaintiff has presented evidence

that he reported to his employer that Asher retaliated against

Officer Abbatiello, *i.e.*, a suspected violation of § 378-2(a)(2).

Thus, he has established the first element of the prima facie

case for his HWPA claim.  Plaintiff has submitted evidence of

actions that were allegedly taken against him because of his

involvement with the Abbatiello Complaint.  However, there are

genuine issues of material fact as to: 1) whether these actions

constituted adverse employment actions; and 2) if they were
adverse employment actions, whether there was a causal connection
between Plaintiff's protected activity and the adverse employment
actions.  See Crosby, 76 Hawai`i at 342, 876 P.2d at 1310
(discussing the causation analysis).  In light of these triable
issues of fact, to the extent the County Defendants argue they
are entitled to summary judgment as to Count III because
Plaintiff failed to establish the elements of his prima facie
case, the County Joinder is denied as to the portions of
Count III that are not time-barred.

    **C.**   **Count IV – IIED**

      This Court must first determine whether Plaintiff's
IIED claim against the County Defendants is barred by workers'
compensation exclusivity.  An employee cannot bring an IIED claim
against his employer based on employment discrimination, "except
for sexual harassment or sexual assault and infliction of
emotional distress or invasion of privacy related thereto."  Haw.
Rev. Stat. § 386-5.  The exception allowing IIED claims arising
from sexual harassment or sexual assault also extends to IIED
claims arising from retaliation that an employee experiences
related to a report of sexual harassment or sexual assault.
Hillhouse v. Hawaii Behavorial Health, LLC, Civil No. 14-00155
LEK-BMK, 2014 WL 5528239, at *5-6 (D. Hawai`i Oct. 31, 2014).

It is undisputed that the County and KPD are
Plaintiff's employers.  See Haw. Rev. Stat. § 386-1 (defining
employer for purposes of Chapter 386).  Further, Plaintiff's
claims against Perry and Contrades, in their official capacities,
are essentially claims against the County.  See Coconut Beach
Dev. LLC v. Baptiste, Civil. No. 08-00036 SOM/KSC, 2008 WL
1867933, at *2 (D. Hawai`i Apr. 28, 2008) ("A suit against county
officers in their official capacities is essentially a suit
against the county." (citing McMillian v. Monroe County, Alabama,
520 U.S. 781, 785 n.2, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997))).
There is no allegation that Plaintiff was subjected to sexual
harassment or sexual assault.  Thus, § 386-5 precludes
Plaintiff's IIED claim against the County Defendants unless
Plaintiff's alleged emotional distress is related to his report
of sexual harassment or sexual assault.

Because of a prior complaint she made against the
County, Asher allegedly displayed inappropriate behavior toward
Officer Abbatiello when she expressed her interest in
transferring to the vice section.  Plaintiff characterized
Asher's behavior as "harassment," "a hostile work environment,"
and a "violati[on] of [Officer Abbatiello]'s civil rights."
[Pltf. Perry Aff., Exh. U (12/29/11 Guyot Memo).]  Even viewing
the record in the light most favorable to Plaintiff, there is no
evidence which establishes that the alleged harassment and

hostile work environment by Asher was based on Officer
Abbatiello's sex or that Asher sexually assaulted her.  See Pltf.
Perry Aff. at ¶ 10 (stating Plaintiff confirmed with Asher that
Asher did not want Officer Abbatiello in the vice section because
of her prior complaint against the County).  In his report,
Mr. Withy concluded: "There [was] an Ongoing Atmosphere of
Retaliation Against Officer ABBATIELLO" because of her report of
the possible bribery of a KPD detective in 2003, which was
followed by an internal complaint, a lawsuit, and a settlement
"at a great expense to the County." [Withy Report at 5 (emphasis
in original).]  Mr. Withy found that Asher's behavior during the
January 2011 incident "clearly indicate[d] a strong bias against
Officer Abbatiello with no logical basis in fact other than
retaliation."[17]  [Id. at 12.]  Construing the record in the light
most favorable to Plaintiff, there is also evidence that Asher's
behavior during the January 2011 incident may have been
retaliation for Abbatiello's prior complaints about sexual
harassment by AC Quibilan.  See, e.g., Suppl. Connors Decl.,
Exh. GG (1/25/12 memo to the Commission from Abbatiello reporting
incidents beginning in 2004).  According to Officer Abbatiello,
AC Quibilan: treated her worse than he treated any male officer;

---

[17] Asher was a friend of the detective accused of bribery,
as well as the detective's supervisor at the time of Officer
Abbatiello's allegation.  Asher conducted the internal
investigation of Officer Abbatiello's allegation and found it
unsubstantiated.  [Withy Report at 12.]

[id. at 2;] frequently made comments about her breasts being

"'fake'"; [id. at 4;] and told her that she and another County

employee who had a pending lawsuit against the County "'should

hook up and become lesbians and make a career out of suing the

county,'" [id.]. Even if Asher's behavior in January 2011 was

retaliation for Officer Abbatiello's report of sexual harassment

by AC Quibilan, the acts which caused Plaintiff emotional

distress were allegedly retaliation for reporting retaliation,

not retaliation for reporting sexual harassment or sexual

assault. Thus, Plaintiff's IIED claim against the County

Defendants is barred by § 386-5. The County Joinder is granted

insofar as the County Defendants are granted summary judgment as

to Count IV.

### D. Qualified Immunity/Conditional Privilege

Finally, the County Defendants argue they are entitled

to qualified immunity as to Count I and qualified/conditional

privilege as to Plaintiff's remaining state law claims. For the

same reasons set forth in the discussion of whether Perry, in his

individual capacity, is entitled to qualified/conditional

privilege, this Court also finds there are genuine issues of

material fact regarding the County Defendants' entitlement to

qualified/conditional privilege from liability for Plaintiff's

state law claims. In addition, there are also genuine issues of

material fact as to whether any retaliation that occurred was the

result of individual animus, rather than official County or KPD

action or policies.  See, e.g., Perry Decl. at ¶ 11 & Exh. 14

(asserting that "as the Chief of Police, [Perry was] duty bound

to uphold the law and report what [he] perceived to be a

potentially fraudulent workers' compensation claim being made by

Plaintiff").

As to the issue of whether a government official is

entitled to qualified immunity from a Title VII claim, the Ninth

Circuit has stated:

> qualified immunity is "an entitlement not to stand
> trial," that is "an **immunity from suit** rather than
> a mere defense to liability."  Mitchell v.
> Forsyth, 472 U.S., 511, 526, 105 S. Ct. 2806, 86
> L. Ed. 2d 411 (1985) (emphasis in original).  As a
> consequence, qualified immunity "safeguards 'all
> but the plainly incompetent or those who knowingly
> violate the law.'"  Brewster v. Bd. of Educ. of
> the Lynwood Unified Sch. Dist., 149 F.3d 971, 977
> (9th Cir. 1998) (quoting Malley v. Briggs, 475
> U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271
> (1986)).  This standard "allows ample room for
> reasonable error on the part of the [official]."
> Knox v. Southwest Airlines, 124 F.3d 1103, 1107
> (9th Cir. 1997).  It encompasses both mistakes of
> fact and mistakes of law.  Butz v. Economou, 438
> U.S. 478, 507, 98 S. Ct. 2894, 57 L. Ed. 2d 895
> (1978).
>
> . . . [T]he Supreme Court's recent teaching
> in Saucier v. Katz . . . clarified the proper
> paradigm for assessing a qualified immunity claim.
> After Saucier, we ask a threshold question: "Taken
> in the light most favorable to the party asserting
> injury, do the facts alleged show the officer's
> conduct violated a constitutional right?"  533
> U.S. at 201, 121 S. Ct. 2151.  Only after
> determining whether the right was violated do we
> proceed to the next step of this two-part inquiry:
> whether the law was so clearly established that "a

> reasonable official would understand that what he is doing violates that right." <u>Id.</u> at 202, 121 S. Ct. 2151 (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).[18] "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [official] conduct." <u>Id.</u> at 205, 121 S. Ct. 2151. Central to our inquiry here, this analysis occurs in the specific context of "the situation . . . confronted" by the official. <u>Id.</u> at 202, 107 S. Ct. 3034.

<u>Rudebusch v. Hughes</u>, 313 F.3d 506, 514 (9th Cir. 2002) (some alterations in <u>Rudebusch</u>).

Perry, who was the head of KPD at the time, was warned on multiple occasions that his requests regarding Plaintiff were not proper and could expose him and the County to liability. <u>See, e.g.</u>, Pltf.'s Additional Suppl. Mem. Exhs., Exh. 8 at COK00086 (email to Perry from Mr. Benabese stating that, in order to remove Plaintiff from the E911 Board, the Governor had to show cause, pursuant to Haw. Rev. Stat. § 26-34(d), and the fact that a person was receiving workers' compensation benefits did not constitute cause); Suppl. Connors Decl., Exh. BB-5 (letter to Perry from Deputy County Attorney Guyot warning Perry that his letters to Ms. Wood of BKI were inappropriate); Hosoda Perry

---

[18] The United States Supreme Court has subsequently held that, "while the sequence set forth [in <u>Saucier</u>] is often appropriate, it should no longer be regarded as mandatory." <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). Instead, courts should "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Id.</u>

Decl., Exh. NN (letter to Perry from the Mayor and Commission Chair warning against retaliation against KPD officers who filed EEOC complaints).  This evidence, and the current record as a whole, is sufficient to raise a genuine issue of material fact as to whether the County Defendants were aware that their conduct may have been a violation of Plaintiff's clearly established statutory or constitutional rights.  Of particular note is correspondence from the County Attorney's Office, and from the Mayor and Commission Chair indicating notice and knowledge of inappropriate behavior and retaliation.  Genuine issues of material fact exist as to whether any retaliation that occurred was the result of personal animus.  These triable issues of fact preclude a ruling as to whether the County Defendants are entitled to qualified immunity from liability for Plaintiff's Title VII retaliation claim.

### E.    Summary

Summary judgment is granted in favor of the County Defendants as to: 1) the portion of Count III (Plaintiff's HWPA claim) based on incidents that occurred more than two years prior to the filing of this action; and 2) Count IV (IIED).  The County Joinder is denied as to: a) Plaintiff's Title VII and § 378-2(a)(2) retaliation claims in Count I; and b) the portion of Count III based on incidents that occurred within the two years prior to the filing of this action.

## III. **Effect of the ICA RTWP Opinion on the Remaining Claims**

The parties were granted leave to brief the issue of whether the ICA Opinion affects the remaining claims in this case. In the RTWP Action, Plaintiff alleged the following claims:

> Count I: Preliminary and permanent "Injunctive Relief" "preventing [the County] from forcing [Begley] into the RTWP and/or taking action to terminate [Begley's] employment."
>
> Count II: "Declaratory Relief" declaring that:
>
> > (1) Begley is not "permanently disabled;"
> >
> > (2) The County's acts of forcing Begley into the RTWP is unsupported and improper;
> >
> > (3) "Plaintiff is fully capable of returning to his usual and customary work, provided that Defendants ensure a safe working environment for Plaintiff;"
> >
> > (4) "the RTWP was unconstitutionally adopted;"
> >
> > (5) the RTWP is unconstitutional because it does not provide for adequate due process; and
> >
> > (6) Begley's due process and equal protection rights were violated when the County forced him into the RTWP and failed to reconsider its decision.
>
> . . . .
>
> Count IV: Damages for "Intentional Infliction of Emotional Distress" for willfully and/ or wantonly deciding to force Begley into the RTWP.

Count V: Damages for "Aiding and Abetting" for, with knowledge of improper and illegal conduct taken against Begley, helping, and/or encouraging such conduct.

Count VI: Damages for "Civil Conspiracy" for agreeing, approving and/or otherwise engaging in unlawful activities to achieve a common goal.

Count VII: Damages for "Concert of Action" for engaging in tortious and/or wrongful activity pursuant to a common design.

ICA Opinion, 2018 WL 6259318, at *2 (some alterations in ICA Opinion) (footnotes omitted). These will be referred to as "RTWP Count I," "RTWP Count II," etc. RTWP Count III, a 42 U.S.C. § 1983 claim, was voluntarily dismissed prior to the appeal. Id. at *2 & n.10.

The ICA held that the DLIR has exclusive original jurisdiction over the issues raised in RTWP Counts I and II, and therefore those claims should have been dismissed because the DLIR had not completed its proceedings to determine whether, and, if so, under what circumstances, Plaintiff could return to work. Id. at *3–9. The ICA also held the circuit court abused its discretion by dismissing RTWP Counts IV through VII because they were tort claims "based on the illegitimacy of a process (the RTWP) that determines whether an employee is ratable/eligible to return to work and what work he is eligible for is something within the expertise of the [DLIR] Director." Id. at *9.

The ICA held the circuit court abused its discretion by dismissing RTWP Counts IV through VII without addressing whether

47

dismissal "would 'unfairly disadvantage'" Plaintiff's ability to

bring his claims.  Id. at *10 (citing United Public Workers,

AFSCME, Local 646, AFL-CIO v. Abercrombie, 133 Hawai`i 188, 203,

325 P.3d 600, 615 (2014); Jou v. Nat'l Interstate Ins. Co. of

Haw., 114 Hawai`i 122, 129, 157 P.3d 561, 568 (Ct. App. 2007)).

However, only RTWP Counts IV through VI were remanded with

instructions to consider whether the claims should be dismissed

or stayed under the Abercrombie analysis.  The Judgment on Appeal

was filed on January 7, 2019, and it does not appear that an

application for a writ of certiorari was filed.

Plaintiff argues the ICA Opinion has no effect on the

instant case because all of the remaining state law claims in

this case are similar to RTWP Count VII, "Concert of Action."

See id. at *2.  Plaintiff argues that, because the ICA held the

circuit court abused its discretion by dismissing RTWP Counts IV

through **VII**, but only remanded with instructions to consider

whether dismissal or stay was appropriate as to Counts IV through

**VI**, the ICA ruled that the proceedings as to RTWP Count VII could

go forward immediately, irrespective of the administrative

proceedings regarding the RTWP.  Even if Plaintiff's

interpretation of the ICA Opinion is correct, there is

insufficient information about RTWP Count VII for this Court to

determine whether the claims in this case are similar to RTWP

Count VII.  This Court therefore rejects Plaintiff's argument
that the ICA Opinion has no effect on the claims in this case.

A.  **Claims Related to the RTWP**

Plaintiff's remaining state law claims in the instant
case do not challenge the legitimacy of the RTWP, nor do they
seek a declaratory judgment that Plaintiff is not required to
participate in the RTWP.  However, Plaintiff argues certain
RTWP-related actions that the defendants took were in retaliation
for his protected activity or, at a minimum, constitute evidence
of the defendants' intent.  Plaintiff alleges that, as part of
"the acts and pattern of retaliation," the County tried to force
him into the RTWP "in an effort to end his employment with KPD
and force him into a different line of work."  Third Amended
Complaint at ¶ 113; see also Pltf.'s Additional Suppl. Mem.
Exhs., Exh. 15 (letter, dated 11/24/14, to Plaintiff from
Thomas Takatsuki, Acting Director of Personnel Services,
discussing the RTWP).  Plaintiff was warned that his employment
would be terminated if he refused to participate in the RTWP.
Third Amended Complaint at ¶ 113; see also Hosoda Perry Decl.,
Exh. OO at COK 100735-36 (signed draft letter, dated 1/6/16, to
Plaintiff from Perry notifying Plaintiff of his pending
termination for failure to comply with the RTWP).  The defendants
contend the actions related to the RTWP had a legitimate purpose.
Thus, the litigation of Plaintiff's remaining state law claims

and the defenses thereto will require consideration of whether
and, if so, when and under what circumstances, Plaintiff was able
to return to work.  These are issues that the DLIR Director must
have the first opportunity to review.  See ICA Opinion, 2018 WL
6259318, at *9.

       The ICA Opinion stated that the administrative
proceedings regarding Plaintiff's ability to return to work
("RTWP Administrative Proceedings") had not yet occurred.  Id. at
*7.  The parties have not presented any evidence that the RTWP
Administrative Proceedings took place in the months since the
filing of the ICA Opinion.  This Court therefore assumes that the
RTWP Administrative Proceedings still have not taken place.
Thus, the issue before this Court is whether the proceedings on
the portion of Plaintiff's state law claims based on the
RTWP-related actions should be dismissed or stayed pending the
completion of the RTWP Administrative Proceedings.  The ICA
stated:

              [a] trial court has discretion in fashioning an
              appropriate remedy when applying the primary
              jurisdiction doctrine.  As an alternative to
              staying the proceedings pending administrative
              resolution of predicate issues, the court has the
              discretion to dismiss the case without prejudice.
              Reiter [v. Cooper], 507 U.S. [258,] 268-69, 113
              S. Ct. 1213 [(1993)].  However, dismissal is an
              appropriate remedy only "if the parties would not
              be unfairly disadvantaged."  Id. at 268, 113
              S. Ct. 1213.  In Dr. Jou's case, the circuit court
              did not consider whether Dr. Jou would be unfairly
              disadvantaged by the dismissal because it held,
              incorrectly, that dismissal was required on

> jurisdictional grounds for failure to exhaust
> administrative remedies.

ICA Opinion, 2018 WL 6259318, at *10 (quoting <u>Jou</u>, 114 Hawai`i at
129, 157 P.3d at 568).[19]  Because Plaintiff was referred to the
RTWP as early as November 24, 2014, [Pltf.'s Additional Suppl.
Mem. Exhs., Exh. 15,] dismissing the portions of Plaintiff's
state law claims based on RTWP-related acts would "unfairly
disadvantage" Plaintiff because he would not be able to refile
those claims after the RTWP Administrative Proceedings concluded.
This Court therefore concludes that the portions of Plaintiff's
remaining state law claims that are based on RTWP-related actions
must be stayed pending the resolution of the RTWP Administrative
Proceedings.

**B.    Claims Based on Other Actions
       Related to Workers' Compensation**

Plaintiff's remaining state law claims are also based
on actions, taken before Plaintiff was referred to the RTWP, that
were related to his workers' compensation claim ("Pre-RTWP
Workers' Compensation Acts").  As discussed, *supra*, Plaintiff has
produced evidence of the defendants' efforts: to have him removed
from the E911 Board because he was receiving workers'
compensation benefits; and to contact persons outside of the DLIR
in order to contest the validity of Plaintiff's workers'

---

[19] The dismissal in <u>Jou</u> was affirmed on other grounds.  <u>See</u>
ICA Opinion, 2018 WL 6259318, at *10.

compensation claim.  The defendants argue the Pre-RTWP Workers'
Compensation Acts were not retaliatory and had a legitimate
purpose because the defendants were required to act upon their
suspicions that Plaintiff's workers' compensation claim was
fraudulent.

Plaintiff's remaining state law claims based on the
Pre-RTWP workers' compensation Acts neither challenge the
legitimacy of the workers' compensation scheme in general nor
seek a declaratory judgment that Plaintiff was, or is, entitled
to workers' compensation benefits.  However, the litigation of
the **defenses** to the portions of Plaintiff's claims based on the
Pre-RTWP Workers' Compensation Acts will require an examination
of whether, prior to Plaintiff's referral to the RTWP, the
defendants had a reasonable basis to believe that Plaintiff's
workers' compensation claim was fraudulent.

The issue of whether Plaintiff was entitled to workers'
compensation benefits before he was referred to the RTWP is a
matter that the DLIR has exclusive original jurisdiction over.
See ICA Opinion, 2018 WL 6259318, at *3-9.  However, there is no
evidence in the record that Plaintiff's employer complied with
the statutory requirements either to contest Plaintiff's initial
entitlement to workers' compensation benefits or to seek
subsequent termination of Plaintiff's benefits.  See Haw. Rev.
Stat. § 386-31(b) ("The employer shall pay temporary total

disability benefits promptly as they accrue to the person entitled thereto without waiting for a decision from the director, unless this right is **controverted by the employer in the employer's initial report** of industrial injury." (emphasis added));[20] id. ("The payment of these benefits shall only be terminated upon order of the director or if the employee is able to resume work. **When the employer is of the opinion that temporary total disability benefits should be terminated** because the injured employee is able to resume work, **the employer shall notify the employee and the director in writing** of an intent to terminate the benefits . . . ." (emphases added)).[21]  Therefore, under the exhaustion doctrine discussed in the ICA Opinion, Plaintiff's employer is barred from challenging Plaintiff's entitlement to workers' compensation benefits during the period prior to his referral to the RTWP.  See ICA Opinion, 2018 WL 6259318, at *3 ("The doctrine of exhaustion of administrative remedies provides that where a claim is cognizable in the first instance by an administrative agency alone, [j]udicial review of agency action will not be available unless **the party affected has**

_____

[20] Plaintiff's employer did not deny liability in the initial injury report.  [Pltf.'s Additional Suppl. Mem. Exhs., Exh. 2 (WC-1 Employer's Report of Industrial Injury, dated 3/14/12).]

[21] There is no evidence in the record that Plaintiff's employer provided the required notices to initiate the process to terminate his workers' compensation benefits.

**taken advantage of all the corrective procedures provided for in
the administrative process**. . . . As such, the doctrine of
exhaustion of remedies **temporarily** divests a court of
jurisdiction." (some emphases in ICA Opinion) (internal quotation
marks omitted) (quoting <u>Kellberg v. Yuen</u>, 131 Hawai`i 513, 527,
319 P.3d 432, 446 (2014))).

It is a separate issue whether, even accepting
Plaintiff's ultimate entitlement to pre-referral workers'
compensation benefits, the defendants had a reasonable initial
suspicion that Plaintiff's workers' compensation claim was
fraudulent.  At best, this is an issue where the primary
jurisdiction doctrine applies.  <u>See</u> <u>id.</u> ("[T]he doctrine of
primary jurisdiction applies where a claim is **originally
cognizable in the courts**, and comes into play whenever
enforcement of the claim requires the resolution of issues which,
under a regulatory scheme, have been placed within the special
competence of an administrative body, . . .  When this happens,
the judicial process is suspended pending referral of such issues
to the administrative body for its views, and the courts are
effectively divested of whatever original jurisdiction they would
otherwise possess." (emphasis in ICA Opinion) (internal quotation
marks omitted) (quoting <u>Kellberg</u>, 131 Hawai`i at 527, 319 P.3d at
446)).  Under the primary jurisdiction doctrine, the issue of
whether the defendants' belief was reasonable would ordinarily be

something that the DLIR Director should have the first opportunity to review. However, there is no reason to defer to the DLIR in the instant case because Plaintiff's employer did not follow the statutorily mandated procedures to contest or terminate Plaintiff's workers' compensation benefits before Plaintiff was referred to the RTWP. Therefore, the analysis in the ICA Opinion regarding dismissal or stay does not apply to the portions of Plaintiff's state law claims based on the Pre-RTWP Workers' Compensation Acts. It is not necessary to either dismiss or stay those portions of Plaintiff's remaining state law claims.

Further, because Plaintiff's employer failed to take timely administrative actions to challenge his entitlement to workers' compensation benefits before he was referred to the RTWP, this Court rules as follows: 1) Plaintiff's employer is barred from arguing that, during the period before Plaintiff was referred to the RTWP, Plaintiff was not entitled to workers' compensation benefits; and 2) no defendant will be allowed to present that argument at trial because doing so would confuse the jury and be unfairly prejudicial to Plaintiff.

C.    **Whether the Stayed Claims Can Be Severed**

The proceedings on the portions of Plaintiff's remaining state law claims based on acts related to the RTWP are HEREBY STAYED, pending the completion of the RTWP Administrative

Proceedings.  The parties are ORDERED to submit letter briefs addressing: 1) whether the portions of Plaintiff's state law claims based on acts related to the RTWP can be severed; 2) if the stayed claims cannot be severed, whether the entire case must be stayed; and 3) whether there are other possible procedures to preserve the RTWP-related claims.

Each party's letter brief must be submitted by **April 26, 2019**, and must be no more than five pages long.  All letter briefs must be submitted to this Court by facsimile to (808)541-1386 or by hand delivery to this Court's chambers.  The parties are CAUTIONED that, unless specifically ordered by this Court or the Ninth Circuit, no other dates or deadlines in this case are affected by the stay of Plaintiff's state law claims based on acts related to the RTWP.

<u>**CONCLUSION**</u>

On the basis of the foregoing, the Motion for Summary Judgment that Perry, in his individual capacity, filed on June 20, 2018, is HEREBY DENIED; and the substantive joinder in the Perry Motion, which the County Defendants filed on June 27, 2018, is HEREBY GRANTED IN PART AND DENIED IN PART.  The County Joinder is GRANTED insofar as: summary judgment is granted in favor of the County Defendants as to the portion of Count III based on alleged retaliatory acts that occurred more than two years before this action was filed; and summary judgment is

granted in favor of the County Defendants as to Count IV.  The County Joinder is DENIED in all other respects.

In addition, the proceedings on the portions of Plaintiff's remaining state law claims that are based on acts related to the RTWP are HEREBY STAYED.  The parties are ORDERED to submit their letter briefs regarding the potential severance of the stayed claims, in accordance with the terms of this Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 11, 2019.



_/s/ Leslie E. Kobayashi_
Leslie E. Kobayashi
United States District Judge

**MARK N. BEGLEY VS. COUNTY OF KAUAI, ET AL.;** CIVIL 16-00350 LEK-RLP; SUMMARY JUDGMENT ORDER; ORDER STAYING PLAINTIFF'S CLAIMS RELATED TO THE RETURN TO WORK PROGRAM; AND ORDER DIRECTING THE PARTIES TO SUBMIT FURTHER BRIEFING REGARDING THE STAY